HARRISON v OLDE FINANCIAL CORPORATION .

Docket No. 183996. Submitted September 3, 1996, at Detroit. Decided October 3, 1997, at 9:15 A.M.

Diane Harrison, an African-American, brought an action in the Wayne Circuit Court against Olde Financial Corporation and others, alleging racial discrimination in employment. The court, Richard P. Hathaway, J., granted summary disposition in favor of the defendants, finding that the plaintiff had stated a prima facie case of discrimination under the burden of proof analysis and construct established in *McDonnell Douglas Corp v Green*, 411 US 792 (1973), that the defendants had articulated nondiscriminatory reasons for their actions, and that the plaintiff failed to establish a genuine issue of material fact concerning whether the defendants' reasons were merely pretexts for discrimination. The plaintiff appealed.

The Court of Appeals *held*:

1. The court and the parties applied an incorrect legal analysis. The matter must be remanded for application of the correct analysis.

2. The court correctly found that the plaintiff had stated a prima facie case under *McDonnell Douglas*, that the defendants had articulated nondiscriminatory reasons for their action, and that the plaintiff failed to establish a genuine issue of material fact concerning whether the defendants' reasons were merely pretexts for discrimination. However, the *McDonnell Douglas* burden-shifting analysis is appropriate in cases without direct evidence of discrimination; it does not apply when, as in this case, the plaintiff presents direct evidence of discriminatory animus.

3. The plaintiff's deposition testimony that the defendants' employees made derogatory remarks about her race presents direct evidence of discrimination and raises a question of mixed motives in which the decision not to hire the plaintiff could have been based on several factors, legitimate ones as well as legally impermissible ones.

4. In a typical single-plaintiff, mixed-motive employment discrimination case involving direct evidence of discrimination, the plaintiff always bears the burden of persuading the trier of fact that the employer acted with illegal discriminatory animus. Whatever the

nature of the challenged employment action, the plaintiff must establish evidence of the plaintiff's qualification or eligibility and direct proof that the discriminatory animus was causally related to the decisionmaker's action. The employer may not avoid trial by merely articulating a nondiscriminatory reason for its action and the case ordinarily must be submitted to the factfinder for a determination whether the plaintiff's claims are true. However, and alternatively, in addition to challenging the credibility of the plaintiff's claims, the employer may also assume the burden of persuading the factfinder that, even if the plaintiff's allegations are true, the employer would have made the same decision without consideration of discriminatory factors.

5. The trial court abused its discretion in denying the plaintiff's motion to compel discovery of certain information that the plaintiff requested from the defendants that was not produced for an in camera inspection or made part of the record. The order denying the motion must be reversed and the matter must be remanded for a determination, based on record evidence, whether the requested information is relevant and, if so, whether the plaintiff's discovery of the information properly may be limited.

Reversed and remanded.

1. CIVIL RIGHTS — DISCRIMINATORY INTENT — DIRECT EVIDENCE.

Direct evidence and the burden-shifting analysis established in *McDonnell Douglas Corp v Green*, 411 US 792 (1973), are different evidentiary paths by which to resolve the ultimate issue of a defendant's discriminatory intent in an action alleging discrimination; the *McDonnell Douglas* evidentiary framework does not apply when the plaintiff presents direct evidence of discriminatory animus; "direct evidence" is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor.

2. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — MIXED MOTIVES — DIRECT EVIDENCE.

The following principles of proof apply to a single-plaintiff, mixed-motive employment discrimination case arising under the Michigan Civil Rights Act: first, in a case involving direct evidence of discrimination, the plaintiff always bears the burden of persuading the trier of fact that the employer acted with illegal discriminatory animus; second, whatever the nature of the challenged employment action, the plaintiff must establish evidence of the plaintiff's qualification and direct proof that the discriminatory animus was causally related to the decisionmaker's action; the case ordinarily must be submitted to the factfinder to determine whether the plaintiff's

claims are true, and the employer may not avoid trial by merely articulating a nondiscriminatory reason for its action; in the alternative, in addition to challenging the credibility of the plaintiff's claims of discrimination in a case involving direct evidence of discriminatory action, the employer may also assume the burden of persuading the factfinder that, even if the plaintiff's allegations are true, the employer would have made the same decision without consideration of discriminatory factors (MCL 37.2101 *et seq.*; MSA 3.548[101] *et seq.*).

*Law Offices of Thomas E. Marshall* (by *Thomas E. Marshall* and *Nancy Brewer*), for the plaintiff.

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *Francis R. Ortiz* and *Andrew S. Doctoroff*), for the defendants.

Before: YOUNG, P.J., and TAYLOR and R. C. LIVO*, JJ.

YOUNG, P.J. In this action alleging racial discrimination in employment, plaintiff Diane Harrison appeals as of right an order granting summary disposition under MCR 2.116(C)(10) to defendants Olde Financial Corporation, Olde Discount Corporation, and Deanna Hatmaker.[1] We reverse and remand.

I

BACKGROUND

Plaintiff is an African-American. In 1994, defendant retained plaintiff through an agency to work as a temporary legal secretary. Bruce Campbell, defendant's corporate counsel, subsequently invited plaintiff to apply for a permanent secretarial position with defendant. Two staff attorneys later interviewed her.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] For ease of reference in this opinion and unless otherwise noted, "defendant" will refer to all three defendants collectively as plaintiff's potential employer.

Plaintiff testified in her deposition that, at some point during her temporary employment with defendant, she overheard one of the two staff attorneys, Karen Brink, say to the other that, although plaintiff was a good secretary, she was "the wrong color."[2] Although defendant asserted that the two attorneys who interviewed plaintiff reportedly were dissatisfied with plaintiff's job performance, Brink nonetheless recommended that Campbell give plaintiff a second interview. Campbell and Deanna Hatmaker, defendant's personnel director, thereafter interviewed plaintiff. Plaintiff testified that as plaintiff was leaving that interview, she overheard Hatmaker tell Campbell that he should not permit plaintiff to address him by his first name because plaintiff was black.

Defendant offered the job to an applicant with higher qualifications than those of plaintiff.[3] However, this applicant declined the offer because the salary associated with the position was too low. Defendant ultimately reorganized the secretarial position plaintiff had applied for and hired two nonminority women who allegedly were less qualified than plaintiff for the two new clerical legal support positions that encompassed the duties of the original legal secretarial posi-

---

[2] Although plaintiff implies that she was also discriminated against because of her weight, her appellate brief asserts that defendant discriminated against her solely because of her race. Therefore, to the extent that plaintiff has asserted a claim for weight discrimination, that claim has been abandoned on appeal. *Froling v Carpenter*, 203 Mich App 368, 372; 512 NW2d 6 (1994).

[3] Plaintiff did not directly contest that the applicant to whom the job offer was made had higher qualifications. Instead, plaintiff curiously asserts that this applicant's qualifications were irrelevant because that applicant declined the offer.

tion.[4] Plaintiff ceased working for defendant in April 1994 and immediately filed suit. The trial court granted defendant's motion for summary disposition, ruling that defendant had legitimate, nondiscriminatory business reasons for declining to hire plaintiff.

On appeal, plaintiff asserts that the circuit court erred in granting summary disposition to defendant. We agree, but for entirely different reasons than urged by plaintiff. Instead, we conclude that the circuit court and the parties applied an incorrect legal analysis.

This Court reviews a trial court's determination regarding motions for summary disposition de novo. *Stehlik v Johnson (On Rehearing)*, 206 Mich App 83, 85; 520 NW2d 633 (1994). A motion for summary disposition under MCR 2.116(C)(10) tests whether factual support exists for the claim. The trial court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence within the action. *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). The court's task is to review the record evidence, and all reasonable inferences therefrom, and determine whether a genuine issue of material fact exists to warrant a trial. *Id.* In reviewing a trial court's summary disposition decision, this Court makes all legitimate inferences in favor of the nonmoving party. *Id.* at 162.

---

[4] Campbell averred that he was unable to obtain permission to raise the salary for the legal secretarial position. Therefore, he chose to restructure it into two lower-compensated clerical positions. It is apparently undisputed that the two support positions that were ultimately filled by defendant paid salaries well below plaintiff's stated salary demand.

II

PROOF OF EMPLOYMENT DISCRIMINATION

Plaintiff alleges that defendant engaged in disparate treatment in violation of the Michigan Civil Rights Act, MCL 37.2101 *et seq.;* MSA 3.548(101) *et seq.*, by refusing to hire her because of race.[5] This constitutes a claim of intentional discrimination, which may be proved by alternate methods. *Meagher v Wayne State Univ*, 222 Mich App 700, 708-710; 565 NW2d 401 (1997). Intentional discrimination may be established by direct or indirect evidence. *Id.* at 710.

In analyzing discrimination claims arising under the Michigan Civil Rights Act, Michigan courts have often resorted to federal precedent for guidance. *Id.* Indeed, the parties in this case have used, and the circuit court applied, the federal burden of proof analysis and construct established in *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973). Because most employment discrimination cases involve only circumstantial evidence of discrimination, the *McDonnell Douglas* burden of proof model was tailored for such cases. See *Pierce v Com-*

---

[5] We note that claims under state statutes prohibiting discrimination often concern issues of fact relating to the conduct or motive of the defendant. *Betty v Brooks & Perkins*, 446 Mich 270, 282; 521 NW2d 518 (1994). The race-based comments testified to by plaintiff, and the reasonable inferences that they raise, call into question defendant's motivation in declining to hire plaintiff. The defendant's employees in question deny making the comments, which, in turn, calls into question plaintiff's credibility. When credibility is at issue, summary disposition rarely is appropriate. *Metropolitan Life Ins Co v Reist*, 167 Mich App 112, 121; 421 NW2d 592 (1988). Nonetheless, when a motion for summary disposition in a discrimination case is properly supported, the motion may be granted. See, e.g., *Clark v Uniroyal Corp*, 119 Mich App 820; 327 NW2d 372 (1982); *Smith v Consolidated Rail Corp*, 168 Mich App 773, 778-779; 425 NW2d 220 (1988); *Sisson v Univ of Michigan Bd of Regents*, 174 Mich App 742, 747-749; 436 NW2d 747 (1989).

*monwealth Life Ins Co*, 40 F3d 796, 801, n 6 (CA 6, 1994). Consequently, as explained in *Meagher*, the *McDonnell Douglas* method of establishing a prima facie case of intentional discrimination relies upon a "presumptive approach." *Meagher, supra* at 710. The Supreme Court in *Texas Dep't of Community Affairs v Burdine*, 450 US 248, 253-254; 101 S Ct 1089; 67 L Ed 2d 207 (1981), stated:

> The [*McDonnell Douglas*] prima facie case serves an important function . . . : it eliminates the most common nondiscriminatory reasons for the plaintiff's rejection. As the Court explained in *Furnco Construction Corp v Waters*, 438 US 567, 577[;] 57 L Ed 2d 597[;] 98 S Ct 2943 (1978), the prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." [Some citations omitted.]

Under the *McDonnell Douglas* approach that Michigan has adopted in various forms, the court must first determine if the plaintiff has stated a prima facie case of discrimination. *Meagher, supra* at 710-711.[6] "Prima

---

[6] The prima facie case analysis formulated in *McDonnell Douglas* requires a showing

". . . (i) that [the complainant] belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." [*Allen v Comprehensive Health Services*, 222 Mich App 426, 430; 564 NW2d 914 (1997), quoting *McDonnell Douglas, supra* at 802.]

As noted in the text, Michigan case law has varied the *McDonnell Douglas* elements of the prima facie case. In one such Michigan formulation, to establish a prima facie case of intentional discrimination on the basis of circumstantial evidence, a plaintiff must show that she was a member of a protected class, that she was discharged, and that the person who discharged her was predisposed to discriminate against persons in the plain-

facie case" in the *McDonnell Douglas* context means only that the plaintiff has provided enough evidence to create a rebuttable presumption of discrimination. *Dixon v W W Grainger, Inc*, 168 Mich App 107, 115; 423 NW2d 580 (1987). It does not mean that the plaintiff has provided sufficient evidence to allow the case to go to a jury. *Id.* If the court concludes that the plaintiff has established a prima facie case of discrimination, the court then examines whether the defendant has articulated a legitimate, nondiscriminatory reason for its action. *Meagher, supra* at 711. If that articulation is made, the court next considers whether the plaintiff has proved by a preponderance of the evidence that the reason offered by the defendant was a mere pretext for discrimination. *Id.* at 711-712.

As noted, the circuit court relied upon the *McDonnell Douglas* model in resolving defendant's motion. We conclude that the circuit court correctly found that plaintiff had stated a prima facie case of discrimination under *McDonnell Douglas*,[7] that defendant had

tiff's protected class and actually acted on that predisposition in discharging her. *Singal v General Motors Corp*, 179 Mich App 497, 503; 447 NW2d 152 (1989). We rely upon the *Singal* formulation of the *McDonnell Douglas* prima facie case because the parties fashioned their circuit court and appellate arguments around the decisionmaker's predisposition, or lack thereof, to discriminate.

[7] As an African-American, plaintiff is a member of a protected class. Defendant's refusal to hire plaintiff satisfies the "discharge" element. See *Laitinen v Saginaw*, 213 Mich App 130, 132; 539 NW2d 515 (1995); *Bryant v Automatic Data Processing, Inc*, 151 Mich App 424, 426; 390 NW2d 732 (1986). With respect to the "predisposition to discriminate" element, because we are obligated to construe the evidence in the light most favorable to plaintiff, we must accept plaintiff's argument that the racially discriminatory comments of the others participating in the interviewing process must be imputed to Campbell, who defendant states was "the" decisionmaker. *Skinner, supra* at 161-162; see also *Shager v Upjohn Co*, 913 F2d 398, 405 (CA 7, 1990). But see *Aungst v Westinghouse Electric*

articulated nondiscriminatory reasons for its action,[8] and that plaintiff failed to establish a genuine issue of material fact concerning whether defendant's reasons were merely pretexts for discrimination.[9]

Nevertheless, while the *McDonnell Douglas* burden-shifting analysis is appropriate in cases without direct evidence of discrimination, this case presents a different situation. Federal case law holds, and we agree, that the *McDonnell Douglas* evidentiary framework does not apply when a plaintiff presents direct evidence of discriminatory animus. *Kresnak v Muskegon Heights*, 956 F Supp 1327 (WD Mich, 1997); see also

---

*Corp*, 937 F2d 1216, 1221 (CA 7, 1991) (no imputation where the decisionmaker consulted with a supervisor who harbored discriminatory animus, but the decisionmaker relied upon various information, including his own observations in deciding).

In this case, Campbell testified in his deposition that he consulted with and considered Hatmaker's views concerning plaintiff. Consequently, we believe that plaintiff established a question of material fact regarding whether Campbell's decision was influenced by a person that plaintiff alleges operated with racial animus. As a result of these imputed inferences, Campbell cannot be deemed the sole decisionmaker for the purpose of this motion under MCR 2.116(C)(10), and the comments of Brink and Hatmaker do not fall within the "stray remarks" doctrine in the line of cases relied upon by defendant. See, e.g., *McDonald v Union Camp Corp*, 898 F2d 1155 (CA 6, 1990). For these reasons, we conclude that plaintiff has established a prima facie case under the *Singal* version of the *McDonnell Douglas* model.

[8] Defendant submitted the following reasons for refusing to offer plaintiff the job: (1) Campbell believed that another interviewee was more qualified than plaintiff, (2) plaintiff's stated salary demand was excessive and beyond that associated with the position for which she applied, (3) plaintiff acted unprofessionally and performed poorly during the second interview with Campbell and Hatmaker, and (4) plaintiff displayed an inability to perform her temporary legal secretarial duties without extra supervision. These reasons constitute a sufficient articulation of legitimate nondiscriminatory reasons for declining to hire plaintiff.

[9] Plaintiff inadequately rebutted defendant's legitimate reasons. Plaintiff did not show that she was as qualified as the applicant to whom defendant offered the position, and she asked for a salary that exceeded the amount defendant offered. Moreover, plaintiff conceded that she performed poorly at the interview with Campbell.

*Matras v Amoco Oil Co*, 424 Mich 675, 683-684; 385 NW2d 586 (1986). "Direct evidence and the *McDonnell Douglas* formulation are simply different evidentiary paths by which to resolve the ultimate issue of [the] defendant's discriminatory intent." *Blalock v Metals Trades, Inc*, 775 F2d 703, 707 (CA 6, 1985).

"Direct evidence" has been defined in the Sixth Circuit Court of Appeals as evidence that, if believed, " ' "requires the conclusion that unlawful discrimination was at least a motivating factor." ' " *Kresnak, supra* at 1335 (citations omitted). For example, racial slurs by a decisionmaker constitute direct evidence of racial discrimination that is " 'sufficient to get the plaintiff's case to the jury.' " *Id.* (citation omitted). Thus, when direct evidence of discrimination is involved, we believe that federal case law provides appropriate guidance for analyzing discrimination claims arising under the Michigan Civil Rights Act.[10]

In the instant case, plaintiff testified in her deposition that defendant's employees made derogatory comments about her race. Because of plaintiff's direct evidence of discrimination,[11] this case presents a question of mixed motives, one in which defendant's decision not to hire plaintiff could have been based on several factors, legitimate ones as well as legally impermissible ones.[12]

---

[10] Direct evidence of discrimination removes the case from *McDonnell Douglas* because the plaintiff no longer requires the inference of discrimination provided by the *McDonnell Douglas* "presumptive" prima facie case. *Terbovitz v Fiscal Court of Adair Co, Kentucky*, 825 F2d 111, 114-115 (CA 6, 1987).

[11] See n 7.

[12] Since the Michigan Civil Rights Act prohibits discrimination against an individual "because of" race, MCL 37.2202(1)(a); MSA 3.548(202)(1)(a), this is essentially an issue of causation. See *Haskins v United States Dep't of the Army*, 808 F2d 1192, 1197 (CA 6, 1987).

In federal cases involving mixed or dual motives, once the plaintiff has met the initial burden of proving that the illegal conduct (in this case, race discrimination) was more likely than not a "substantial" or "motivating" factor in the defendant's decision, the defendant has the opportunity to show by a preponderance of the evidence that it would have reached the same decision without consideration of the protected characteristic. See *Mt Healthy Bd of Ed v Doyle*, 429 US 274, 287; 97 S Ct 568; 50 L Ed 2d 471 (1977) (involving a First Amendment claim arising under 42 USC 1983); see also *East Texas Motor Freight System, Inc v Rodriguez*, 431 US 395, 403, n 9; 97 S Ct 1891; 52 L Ed 2d 453 (1977).[13]

The *Mt Healthy* analysis was subsequently extended to cases arising under title VII of the Civil Rights Act of 1964, 42 USC 2000e *et seq. Price Waterhouse v Hopkins*, 490 US 228; 109 S Ct 1775; 104 L Ed 2d 268 (1989). In such cases, if the employer can show that the same decision would have been reached even in the absence of discrimination, no liability arises. See *Haskins v United States Dep't of the Army*, 808 F2d 1192, 1197-1198 (CA 6, 1987).[14] Federal courts applying this analysis consider whether a discriminatory factor played a motivating part in the decision by examining the considerations " 'at the

---

[13] Although no reported Michigan case has done so in the context of a civil rights claim, this Court applied this standard in *Napoleon Ed Ass'n v Napoleon Community Schools*, 125 Mich App 398, 400; 336 NW2d 481 (1983), a case involving a violation of the public employment relations act, MCL 423.201 *et seq.*; MSA 17.455(1) *et seq.*

[14] Unlike the approach in some circuits, the Sixth Circuit Court of Appeals applies this test to title VII *liability* rather than only to relief and remedy. *Haskins, supra* at 1198. We believe that the Sixth Circuit Court of Appeals' approach is the better-reasoned approach.

moment of the decision.'" See *Cesaro v Lakeville Community School Dist*, 953 F2d 252, 254 (CA 6, 1992), quoting *Price Waterhouse, supra* at 250. The Supreme Court in *Price Waterhouse, id.* at 242, detailed the logic supporting this additional burden shifting in mixed-motive cases involving gender discrimination:

> To say that an employer may not take gender into account is not, however, the end of the matter, for that describes only one aspect of Title VII. The other important aspect of the statute is its preservation of an employer's remaining freedom of choice. We conclude that the preservation of this freedom means that an employer shall not be liable if it can prove that, even if it had not taken gender into account, it would have come to the same decision regarding a particular person. The statute's maintenance of employer prerogatives is evident from the statute itself and from its history, both in Congress and in this Court.

We believe that the Supreme Court's analysis in *Price Waterhouse* is equally applicable to cases arising under the Michigan Civil Rights Act, which was patterned on title VII. *McCalla v Ellis* 180 Mich App 372, 377-378; 446 NW2d 904 (1989).[15] To summarize, we hold that the following principles of proof apply in a typical single-plaintiff, mixed-motive employment discrimination case. First, as with circumstantial discrimination cases, in a case involving direct evidence of discrimination, the plaintiff always bears the burden of persuading the trier of fact that the employer acted with illegal discriminatory animus. Second,

---

[15] Because the Michigan Civil Rights Act is patterned on the federal Civil Rights Act of 1964, we note that our analysis is not affected by the 1991 amendments of title VII, which have effectively overruled *Price Waterhouse*. See *Woodson v Scott Paper Co*, 109 F3d 913, 932 (CA 3, 1997).

whatever the nature of the challenged employment action, the plaintiff must establish evidence of the plaintiff's qualification (or other eligibility) and direct proof that the discriminatory animus was causally related to the decisionmaker's action. Upon such a presentation of proofs, an employer may not avoid trial by merely "articulating" a nondiscriminatory reason for its action. Under such circumstances, the case ordinarily must be submitted to the factfinder for a determination whether the plaintiff's claims are true.

However, and alternatively, in addition to challenging the credibility of the plaintiff's claims of discrimination, in a case involving direct evidence of discriminatory action, the employer may also assume the burden of persuading the factfinder that, even if the plaintiff's allegations are true, the employer would have made the same decision without consideration of discriminatory factors. In other words, the employer may assume the burden of persuading the factfinder that consideration of the plaintiff's protected characteristics was not "a determining factor" in its employment action. See *Matras, supra* at 684; *Meagher, supra* at 710. We believe that the federal approach in dealing with direct evidence of employment discrimination and employer mixed motives is superior to the *McDonnell Douglas* formula, which Michigan courts have traditionally attempted to apply in these cases.

Turning to the trial court's decision in the present case, in light of plaintiff's direct evidence of discriminatory animus, we conclude that the trial court erred in applying the three-part framework outlined in *McDonnell Douglas* and in granting summary disposition to defendant on that basis. Consequently, we

remand this case to the trial court for further proceedings. On remand, the trial court is directed to reconsider defendant's motion in a manner consistent with this opinion.[16]

III

PLAINTIFF'S DISCOVERY REQUEST

Plaintiff next argues that the circuit court abused its discretion in denying her motion to compel discovery of certain statistics regarding the racial or ethnic composition of defendant's work force. We agree.

This Court reviews a trial court's decision to grant or deny discovery for an abuse of discretion. *SCD Chemical Distributors, Inc v Medley*, 203 Mich App 374, 382; 512 NW2d 86 (1994). MCR 2.302(B)(1) provides that parties may obtain relevant, nonprivileged information, even if such information is inadmissible at trial, provided that the information sought appears reasonably calculated to lead to the discovery of admissible evidence. A court abuses its discretion when it denies discovery of relevant information. *Michigan Millers Mut Ins Co v Bronson Plating Co*, 197 Mich App 482, 495; 496 NW2d 373 (1992), aff'd on other grounds 445 Mich 558 (1994).

Plaintiff asked defendant to produce "EEO-1" reports prepared since 1990 that pertained to defendant's

---

[16] We express no opinion with respect to whether plaintiff has established the necessary causal linkage between defendant's decision not to hire her and the discriminatory animus attributable to defendant's decisionmaker. We further note that four justices of our Supreme Court have recently reemphasized that the Michigan Civil Rights Act addresses only whether an employer's decision was motivated by discriminatory animus, not whether the employer's choice among two qualified candidates was " 'wise, shrewd, prudent, or competent.' " *Town v Michigan Bell Telephone Co*, 455 Mich 688, 704; 568 NW2d 64 (1997) (citation omitted); see also Justice RILEY's concurring opinion in *Town, id.* at 707, n 2.

Detroit office.[17] EEO-1 reports are federally required reports in which federal contractors must disclose by employment classification the demographic character-istics of its work force. *Gulf Oil Corp v Brock*, 250 US App DC 213, 214-215; 778 F2d 834 (1985). Plaintiff argued that the reports would support her claim that defendant did not hire minorities in Detroit and, in turn, that defendant did not hire plaintiff because of her race. The circuit court ruled that the EEO-1 reports were "not probative" of her claims and denied plain-tiff's motion to compel production of the EEO-1 reports.

Defendant does not argue that the information sought was privileged. However, defendant asserts that the information sought was overbroad, covering defendant's 1,650-employee national work force, whereas plaintiff applied for and was denied a posi-tion in defendant's eight-person legal department in Detroit. Defendant relies on *Scales v J C Bradford & Co*, 925 F2d 901, 906-907 (CA 6, 1991), and similar federal cases for the proposition that when the alleged illegal employment decision is localized in an isolated employment unit, a plaintiff is not entitled to discover corporate-wide demographic work force statistics.

Despite defendant's characterization of plaintiff's discovery request, plaintiff's motion to compel discov-ery references only EEO-1 reports for defendant's Detroit office. Further, while the trial court found

---

[17] The circuit court record contains no reference to plaintiff's original requests for production of documents and neither party appended the requests to their respective appellate briefs. Consequently, the only record evidence of the records plaintiff requested are contained in plaintiff's motion to compel discovery and defendant's response thereto.

that the reports were irrelevant, the reports in question were never made a part of the record and were not produced for an in camera inspection by the circuit court. Consequently, there is no record basis upon which we can conclude either that the EEO-1 reports were, as the trial court found, "not probative" of defendant's alleged discrimination[18] or that plaintiff's discovery request is similar to the type of inappropriate fishing expedition that *Scales* prohibited.

Accordingly, we reverse the decision of the circuit court with regard to plaintiff's motion to compel discovery and remand with instructions for the court to make a determination, based on record evidence, whether the requested information is relevant and, if so, whether plaintiff's discovery of this information may be properly limited.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

[18] We note that small statistical samples often provide little or no probative force to show discrimination. *Simpson v Midland-Ross Corp*, 823 F2d 937, 943, n 7 (CA 6, 1987).