**John E. HILL, Plaintiff–Appellant,**

v.

**PHARMACIA & UPJOHN COMPANY, Defendant–Appellee.**

No. 01–1772.

United States Court of Appeals, Sixth Circuit.

May 15, 2003.

278

Before BOGGS, SILER, and GIBBONS, Circuit Judges.

PER CURIAM.

John E. Hill appeals the district court's order granting defendant Pharmacia & Upjohn Company's ("PUC") motion for summary judgment and the order denying his motion for reconsideration. This appeal arises out of age discrimination and breach of contract claims filed by Hill in response to PUC's decisions to eliminate his sales territory, to decline to hire him for a position, and finally to terminate his employment. For the reasons that follow, we affirm.

Hill was employed at PUC since 1975 as a Sales Representative in the Agricultural Division. He had held two earlier sales positions at PUC before PUC formed "Strategic Business Units" ("SBU") in the mid–1990s. Hill was then assigned to the Pork SBU. His sales territory consisted of Michigan, a part of northern Indiana, and a few counties in Pennsylvania. While employed at PUC, Hill received many sales awards, was recognized as an excellent producer, and was second in total

direct sales out of thirteen sales representatives in the Pork SBU.

On September 21, 1999, Hill was told by the Director of the Pork SBU, Wayne Jones, that management had decided to eliminate his sales territory because of changes in the market, such as decreases in the number of swine producers and consolidation in the pork industry. Hill was fifty-three years old. His sales territory was reassigned to Larry Willsey and Bill Greve, who were, respectively, sixty and sixty-one years old. At about the same time, the Pork SBU management eliminated the territory of another Pork SBU sales representative, Shaun Greiner, who was in his thirties.

Hill was presented with a number of options for his continued employment at PUC. The first was taking over the Nebraska Pork SBU territory. While the position provided the same compensation, benefits, and title, and Hill would perform the same duties, it would require Hill to relocate to Nebraska. Hill also expressed interest in the Ohio territory for the Companion Animal SBU, but said that it would not be his first choice, because he preferred working with larger animals. He was also interested in a position as the sales representative in the Dairy SBU Pennsylvania territory. His salary, benefits, job responsibilities, and title would have been the same as his Pork SBU position. In the end, Hill decided to accept the Dairy SBU position, although he contends PUC first declined to hire him for the Ohio Companion Animal SBU position.

The director of the Pork SBU, Jones, told Hill not to contact his customers regarding the reassignment of his territory until the specifics had been determined. Hill wanted to tell those with whom he had developed personal relationships about his situation. He prepared a draft letter to customers and submitted it to Jones for review. That draft, and a subsequent draft, were rejected.

On November 25, 1999, just before Hill was to begin his new position. Hill sent an e-mail to a large number of friends and customers, entitled "Survival!" The e-mail mentioned management's decision to reassign his territory and explained his decision to accept the Pennsylvania job. The pertinent portions of the e-mail read:

> Whether or not the decision from "management" makes any sense at all, the decision was to "eliminate" or "reallocate" my sales territory and offer me the "opportunity" to relocate to a sales territory in Nebraska. Once the shock and "why me" wore off. I decided that I would have to deal with this. . . .

> I just hope and pray that others within the unit are not subjected to the same kind of treatment that had befallen me (although it hasn't been that terrible, compared to what my Haitian friends go through on a daily basis)! In any event, I suspect that I will live in or around the Pittsburgh area. Carol, the cats and the house will remain in Richland.

Hill testified about his reasons for sending the e-mail in his deposition:

> I was extremely frustrated at that point. You know, I felt like I had made—I had initiated, I had put together what I felt was a fair and informative letter. You know, I'd always been trained, I'd always been encouraged to be proactive throughout my career. I'd always been asked and encouraged and told by my supervisors that I should take initiative on things. Obviously, in an appropriate manner. I felt this was no different.

Hill did not tell Jones or other people in management that he had sent the e-mail. He submitted a third draft of a letter to management for review, which was reject-

ed. Management then told Hill that a letter would be prepared for him to sign and send out. Jones learned that Hill had sent the e-mail out, apparently after other sales representatives within the Pork SBU complained. Shortly thereafter, he was placed on administrative leave pending investigation. On December 15, 1999, Hill was terminated for violation of PUC's Gross Misconduct Policy, contained in the company's Employee Guide, based on his act of sending the e-mail to PUC customers.

Hill subsequently filed suit in state court. PUC removed the case to federal court based upon diversity jurisdiction. The district court granted PUC's motion for summary judgment, and denied Hill's motion for reconsideration.

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56. The rule requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must draw all inferences in the light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). This court reviews a grant of summary judgment de novo. *E.E.O.C. v. United Parcel Service, Inc.*, 249 F.3d 557, 561 (6th Cir. 2001).

*Breach of Contract Claim*

■ The district court granted PUC's motion for summary judgment on Hill's breach of contract claim because it found that Hill had not established a genuine issue of material fact regarding whether provisions in PUC's employee guidebook gave rise to a legitimate expectation of just-cause employment.

Hill has not presented any arguments to this court that were not presented to the district court. Having carefully considered the record on appeal, the parties' briefs, and the applicable law, we are not persuaded that the district court erred in granting summary judgment to PUC on the breach of contract claim. The district court fully addressed the arguments of both sides, properly applied relevant Michigan law, and articulated the reasoning supporting summary judgment.

In sum, Michigan law directs a court to consider what an employer has promised, and then, if it determines that a policy amounts to a promise, it must ask whether that promise is reasonably capable of instilling a legitimate expectation of just-cause employment in the employees. *Rood v. Gen. Dynamics Corp.*, 444 Mich. 107, 507 N.W.2d 591, 606–07 (1993). In addressing the first set of policy statements presented by Hill, the district court stated that they were no more than general promises made by PUC to treat its employees with respect and fairness, and that under *Rood,* such promises are "too vague to judicially enforce." *Id.* at 608. The district court also addressed PUC's performance management policy, which it noted could reasonably be extended to disciplinary issues. The district court compared this provision to a similar provision analyzed by the Michigan Supreme Court. The Michigan Supreme Court in *Dolan v. Continental Airlines*, 454 Mich. 373, 563 N.W.2d 23 (1997) held that the progressive disciplinary action policy at issue did not give rise to a legitimate expectation of just-cause employment. *Id.* at 30. The

district court concluded that the policy at issue in the present case was even less supportive of a legitimate expectations claim than the provision at issue in *Dolan*.

The district court did not err in granting summary judgment to PUC on Hill's breach of contract claim.

## Age Discrimination Claim

Among other types of discrimination, Michigan's Elliott–Larsen Act prohibits age discrimination. MCLA 37.2101 *et seq.* A plaintiff establishes a claim for age discrimination through the burden-shifting circumstantial method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Harrison v. Olde Fin. Corp.*, 225 Mich.App. 601, 572 N.W.2d 679, 681 (1997). To establish a prima facie case of age discrimination a plaintiff must establish that (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he suffered the adverse employment action under circumstances that give rise to an inference of unlawful discrimination, for instance, being replaced by a younger person. *Lytle v. Malady*, 458 Mich. 153, 579 N.W.2d 906, 914, 916 (1998). Once a plaintiff has established a prima facie case of discrimination, the burden shifts to the defendant to establish a legitimate, nondiscriminatory reason for the action. *Id.* at 914–15. If this burden is met, the burden again shifts to the plaintiff to establish that the employer's reason is mere pretext. *Id.* at 915. A plaintiff may also prove discrimination through direct evidence, which is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor." *Bartlik v. United States Dep't of Labor*, 73 F.3d 100, 103 n. 5 (6th Cir.1996) (internal quotes and citation omitted).

■ Hill has established that he is a member of a protected class, and that he is qualified for the position. Hill identifies three incidents that he claims are adverse employment actions: (1) the elimination of his sales territory, (2) PUC's decision not to hire him for the Companion Animal position, (3) and after he was hired in another division, his termination for "an infraction of inconsequential moment."

An adverse employment action was defined by this court in *Hollins v. Atlantic Co.*, 188 F.3d 652 (6th Cir.1999):

[A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id.* at 662 (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.*, 993 F.2d 132, 136 (7th Cir.1993)). After Hill's sales territory was eliminated, he decided to assume the Pennsylvania territory for the Dairy SBU. As the district court noted, Hill testified in his deposition that the Pennsylvania position was equal to his prior position with the Pork SBU. We agree with the district court that Hill did not suffer an adverse employment action when his sales territory was eliminated, as he was transferred to a comparable position.

■ Hill also claims that PUC's failure to hire him for the Companion Animal SBU was an adverse employment action. Again he fails to establish that this is so. In his "Survival!" e-mail to friends and customers, he mentioned that he had chosen to take the Pennsylvania Dairy SBU

position and noted that the Companion Animal SBU position was still an open option. He also testified in his deposition that Ron Bryant, Vice President of North American Operations, told him that it would be impossible for him to live in Michigan full-time and handle the Ohio Companion Animal SBU territory. PUC did not decline to hire Hill; an officer merely expressed a concern about Hill's proposed working arrangement. Hill did not suffer an adverse employment action because he chose the Pennsylvania Dairy SBU position.

■ Hill did suffer an adverse employment action when PUC terminated him. Therefore, the question remains whether he established that the termination occurred under circumstances that could give rise to an inference of unlawful discrimination, for instance, being replaced by a younger person. Hill has not presented any evidence to the district court or this court to show that he was replaced by a younger person. He asserts that he was replaced by a twenty-three year-old woman, but claims he could not present evidence of this because PUC curtailed his discovery efforts. The district court acknowledged in its memorandum denying Hill's motion for reconsideration that PUC improperly tried to preclude discovery. However, it also noted that during summary judgment briefing, PUC pointed out Hill's failure to introduce evidence on this point in its brief replying to Hill's brief. Hill had the opportunity to cure this deficiency and did not. Hill has failed to establish that he was terminated under circumstances that give rise to an inference of unlawful discrimination.

The district court did not err in granting summary judgment to PUC on Hill's age discrimination claim. For all the reasons above, we affirm the decision of the district court.