CLAY, Circuit Judge,
concurring in part and dissenting in part.
I join Parts I-A, C and E, as well as Parts II and III of the majority’s opinion. I write separately because the majority ignores or discounts Vredevelt’s direct evidence of discrimination in connection with her removal from the CERT team and failure to be promoted to sergeant. I therefore respectfully dissent from Parts I-B and D of the majority opinion.
I.
A. Removal From the CERT Team
The majority concludes that Vredevelt was removed from the CERT team because of modifications in her work schedule. While this is ostensibly a legitimate nondiscriminatory reason, the majority inappropriately discounts the fact that when Vredevelt questioned Deputy Warden Bosse about her dismissal, Bosse responded that “if she didn’t like his authority, then she should be home barefoot and pregnant.” (Joint Appendix, “J.A.,” at 808.) This type of sexist comment constitutes direct evidence of gender discrimination because it suggests that Vredevelt’s sex played a role in Warden Bosse’s decision to remove her from the CERT team. See Harrison v. Olde Fin. Corp., 225 Mich. App. 601, 572 N.W.2d 679, 683 (1997) (“For example, racial slurs by a decisionmaker constitute direct evidence of racial discrimination that is sufficient to get the plaintiffs case to the jury.”) (quotation and citation omitted); see also Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir.1999) (“[Djirect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer’s actions.”).
In a case such as this, involving direct evidence of discrimination and mixed motives, “i.e., where the adverse employment decision could have been based on both legitimate and legally impermissible reasons, a plaintiff must prove that the defendant’s discriminatory animus was more likely than not a ‘substantial’ or ‘motivating’ factor in the decision.” Sniecinski v. Blue Cross and Blue Shield of Mich., 469 Mich. 124, 666 N.W.2d 186, 192-93 (2003) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 244, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (Plurality Opinion)). Thus, the proper inquiry at summary judgment is whether, viewing the evidence in the light most favorable to Vredevelt as the non-moving party, a reasonable trier of fact could find that Vredevelt’s sex was a substantial or motivating factor in Warden Bosse’s decision to remove her from the CERT team. Instead of according proper weight to the “barefoot and pregnan” comment, the majority dismisses it out of hand, giving conclusive weight to Defendant’s proffered reason for removing Vredevelt from the CERT team. The majority’s analysis is inappropriate because at the summary judgment stage, it is not this Court’s role to weigh the evidence. Sterling China Co. v. Glass, Molders, Pottery, Plastics & Allied Workers Local No. 24, 357 F.3d 546, 551 (6th Cir.2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (“The judge is not to weigh the evidence and determine the truth of the matter, but rather determine whether there is a genuine issue for trial.”). In my opinion, the direct evidence proffered by Vredevelt creates a genuine issue of material fact on the question of whether discriminatory animus was a substantial or motivating factor in Warden Bosse’s decision to remove her from the CERT team, *137 such that a reasonable jury could find in her favor. Therefore, I would reverse the district court’s grant of summary judgment to Defendant on the CERT team removal issue.[4]
B. Failure to Receive Promotion
I would also reverse the district court’s grant of summary judgment to Defendant on the promotion issue. I do not think that the evidence supports Vredevelt’s claim that she was more qualified than DeWolf for the sergeant’s position, and I agree with the majority’s position that “[a]t best, the comparison in this case is between two qualified employees.” (Majority Op. at-.) Once again, however, the majority discounts Vredevelt’s direct evidence of discriminatory animus by individuals who were involved in deciding whether to promote her, thereby inappropriately weighing the evidence and usurping the role of the trier of fact. Id.; see also Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 657-58 (6th Cir.2000) (“No doubt, [defendant] may have sharp retorts to many of [plaintiffs] factual claims ... [which] could well convince a trier of fact of its ease. But at this stage in the trial, the district court’s and our role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. To do so, the court must look at the evidence and make all reasonable inferences in the light most favorable to [plaintiff].”) (internal citations and quotation marks omitted). Officer Stuart Morin testified that he was present when a captain who had been on the review board for Vredevelt’s promotion stated that “women don’t belong in the prison and shouldn’t be in that position, they are not capable of doing it.” (J.A. at 852.) Vredevelt also swore in an affidavit and testified at her deposition that Lieutenant Kevin McDaniels informed her that Deputy Warden Bosse specifically told him Vredevelt was not promoted because Bosse “would not promote any females while he was deputy warden.” Id. at 450, 807. Additionally, Jill Sable, the Personnel Director who participated in Vredevelt’s promotion review, testified that Deputy Warden Bosse was tougher in his questioning of Vredevelt than of DeWolf and Kevin Cox, another male candidate for the promotion, and further, that the questions Bosse asked Vredevelt were “in a different tone and in a different way” and “were more detailed.” Id. at 846. Finally, there is the “barefoot and preg *138 nant” comment made by Deputy Warden Bosse in connection with Vredevelt’s removal from the CERT team, which suggests that discriminatory animus colors Bosse’s employment decisions.
The majority concludes that Warden Elo made the decision of whom to promote, and therefore, Vredevelt’s direct evidence of discriminatory animus by Deputy Warden Bosse and others is irrelevant. However, the record reflects that although Warden Elo was technically the final decisionmaker, the manner in which the promotion decision was made left a great deal of influence to individuals other than Elo. Contrary to the majority’s claims, we have previously held that “courts must consider as probative evidence any statements made by those individuals who are in fact meaningfully involved in the decision to terminate [or promote] an employee.” Wells v. New Cherokee Corp., 58 F.3d 233, 238 (6th Cir. 1995) (emphasis added); see also Hussain v. Highgate Hotels, Inc., 126 Fed. Appx. 256, 262 (6th Cir.2005) (unpublished decision) (stating that in employment discrimination context, direct evidence “shows that the person who made the challenged decision, or was otherwise meaningfully involved in that decision, had a bias or that bias affected the challenged decision”) (emphasis added). Warden Elo selected a three-member promotion board, which was chaired by Deputy Warden Bosse as the Deputy Warden of Security. Each of these board members interviewed and evaluated the candidates for promotion, and provided a scored review. The scores were then tabulated by Sable, as Personnel Director, and given to Warden Elo, who reviewed the scores and discussed them with Deputy Warden Bosse. There is no evidence that Warden Elo interviewed the candidates or otherwise independently interacted with them; to the contrary, the evidence demonstrates that the materials that formed the basis for Warden Elo’s decision were provided and compiled by other individuals, most notably Deputy Warden Bosse. Therefore, the three-member board, and Deputy Warden Bosse, while not the ultimate decisionmakers, had a significant amount of influence in deciding which candidate would be promoted, and their discriminatory comments are clearly relevant evidence in assessing Vredevelt’s claim. Cf. DiCarlo v. Potter, 358 F.3d 408, 416-17 (6th Cir.2004) (holding that derogatory comments by supervisor constituted direct evidence of discriminatory animus, because although manager made ultimate decision to terminate the plaintiff, supervisor made recommendation to manager and was therefore meaningfully involved in the decision to fire the plaintiff).
Additionally, because Vredevelt has produced direct evidence of discriminatory animus by individuals involved in the promotion decision, the majority errs in suggesting that the McDonnell Douglas burden-shifting framework is appropriate. See Harrison, 572 N.W.2d at 683; DiCarlo, 358 F.3d at 415. Defendant claims that DeWolf was promoted due to his military background and higher test scores, which could be legitimate reasons for the decision to promote him over Vredevelt.[5] See Sniecinski, 666 N.W.2d at 193 (citing Price Waterhouse, 490 U.S. at 244-45, 109 S.Ct. 1775) (stating that a mixed motive case is one in which “the adverse employment decision could have been based on both legitimate and legally impermissible reasons,” and “a defendant may avoid *139 liability by proving that it would have made the same decision even if the impermissible consideration had not played a role in the decision.”). Thus, the relevant question for this Court is whether, viewing the evidence in the light most favorable to Vredevelt, there is a genuine issue of material fact on the issue of whether her sex was a substantial or motivating factor in the decision not to promote her. See id. at 192-93. Despite Defendant’s proffered reasons for promoting DeWolf, given the direct evidence of discriminatory animus by Deputy Warden Bosse and another member of the promotion review board, a reasonable trier of fact could find that discrimination was a substantial or motivating factor in the decision not to promote Vredevelt. Therefore, I would reverse the district court’s grant of summary judgment to Defendant on the promotion issue.
II.
I join the majority in upholding the grant of summary judgment to Defendant on Vredevelt’s hostile work environment and intentional infliction of emotional distress claims, as well as her disparate treatment claims involving post assignments, changing facilities, and constructive discharge. However, because Vredevelt has presented direct evidence of discriminatory animus in connection with her removal from the CERT team and her failure to be promoted to sergeant, summary judgment is inappropriate on these issues. I therefore respectfully dissent from Parts I-B and D of the majority opinion.

. Although it is unnecessary for the majority to address the issue given its conclusion that summary judgment was properly granted, I would also find that removal from the CERT team constituted a materially adverse employment action. Materially adverse employment actions include " ‘termination of employment, a demotion evidence by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.’ ” Wilcoxon v. Minn. Mining & Mfg. Co., 235 Mich.App. 347, 597 N.W.2d 250, 257 (1999) (quoting Kocsis v. Multi-Care Mgmt., Inc., 97 F.3d 876, 886 (6th Cir. 1996) (citations omitted)). It is undisputed that CERT team members received a small amount of additional monetary compensation. Perhaps more importantly, however, Defendant's own arguments support the notion that CERT team membership was prestigious and an important element in receiving a promotion. One of the reasons offered by Defendant in support of the decision to promote DeWolf over Vredevelt was DeWolf’s position as CERT team leader. If this is true, then Vredevelt’s removal from the CERT team, and by extension, the elimination of her ability to become a CERT team leader, would materially reduce her chances of receiving a promotion in the future. In this sense, an employee who is not a CERT team member has "a less distinguished title” or position for promotion purposes than a CERT team member. Therefore, Vredevelt’s dismissal from the CERT team arguably constituted an adverse employment action.

. I question whether the test score issue is significant given that only 1.5 percentage points separated Vredevelt and DeWolf's scores, and both scored highly on the test, i.e., 97% for Vredevelt versus 98.5% for DeWolf.