# STATE OF MICHIGAN

# COURT OF APPEALS

RYAN K. THOMPSON,

       Plaintiff-Appellant,

v

DEPARTMENT OF CORRECTIONS,

       Defendant-Appellee.

UNPUBLISHED
March 19, 2015

No. 319668
Ingham Circuit Court
LC No. 13-000186-CD

Before: BOONSTRA, P.J., and SAWYER and O'CONNELL, JJ.

PER CURIAM.

Plaintiff appeals as of right from the trial court order which granted defendant's motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) on plaintiff's claims of employment sex-discrimination and retaliation. We affirm.

## I. FACTUAL BACKGROUND

The facts of this case can primarily be broken down into four different disciplinary incidents involving plaintiff, a corrections officer formerly employed by defendant department, that eventually led to plaintiff's termination from employment. There are also general allegations of sex discrimination made by plaintiff that do not fit any of the four incidents.

## A. INCIDENT NUMBER 1

This incident involves plaintiff's behavior with a female corrections officer, Brittany Markgraff, while the two were at work in one of defendant's correctional facilities. The two are of different ranks. An anonymous prisoner complaint was received that alleged that while plaintiff and Markgraff were operating the food lines, plaintiff grabbed Markgraff by the waist and pulled her buttocks toward his groin and that the two continued to flirt with each other. Prior to this incident, plaintiff had complained to a union official that Markgraff had initiated unwanted sexual advances. However, plaintiff had not filed a complaint with prison management. Shortly after the anonymous prisoner complaint, Markgraff filed a complaint with Captain Keith McConnell against plaintiff stemming from the incident described in the prisoner complaint. An internal affairs investigation was launched into the situation. The investigators interviewed plaintiff and Markgraff, as well as multiple witnesses to the incident. The investigation concluded that Markgraff's allegations against plaintiff were substantiated and that

-1-

plaintiff had committed sexual harassment against Markgraff.  No violations by Markgraff were found.

The warden of the facility, Paul Klee, agreed with the findings of the internal affairs investigation.  However, Klee left the final disciplinary decision in the hands of defendant's Operations Support Administration in Lansing.  OSA discipline coordinator Kathy Warner reviewed the internal affairs investigation and Klee's recommendation and imposed a fifteen-day suspension on plaintiff.  Plaintiff filed a sex discrimination complaint against defendant with the United States Equal Employment Opportunity Commission.

## B.  INCIDENT NUMBER 2

This incident began when Warden Klee received a certified mailing from plaintiff claiming that he was framed in Incident Number 1, providing as evidence the prisoner complaint from Incident Number 1, three Visitor Incident Reports (VIRs), and a handwriting analysis that concluded the prisoner complaint and the VIRs were written by the same person.  The three VIRs were signed by Corrections Officer Danielle D. Pietrangelo.

Because the VIRs were confidential documents that plaintiff was not permitted to provide to an unauthorized civilian, such as the handwriting expert, an investigation was launched into how plaintiff obtained the documents and whether he committed any violations for providing them to an unauthorized civilian.  Plaintiff denied that he removed the VIRs from the facility, but did not dispute that he provided them to the handwriting expert.  Following a process similar to the one pursued in Incident Number 1, Warner imposed a sixteen-day suspension on plaintiff.

## C.  INCIDENT NUMBER 3

This incident occurred after plaintiff and Captain McConnell got in a verbal exchange in an area of the prison known as "the bubble."  Plaintiff filed a complaint against Captain McConnell regarding the incident, alleging that McConnell got within twelve inches of his face and yelled at him about his beard and then told him to drop his lawsuit or else McConnell would have him fired.  McConnell denies making such a threat and asserts that he simply approached plaintiff, at a distance greater than the twelve inches plaintiff alleges, and told him to address the shaving issue.  McConnell then ordered plaintiff out of the bubble and had him escorted off the premises.

Another internal affairs investigation was launched, which concluded that plaintiff had been insubordinate, engaged in conduct unbecoming, and violated rules and regulations.  Warden Klee substantiated the findings of the internal affairs investigation and recommended plaintiff be terminated.  Warner determined that termination was not appropriate and imposed a seventeen-day suspension.

## D.  INCIDENT NUMBER 4

This incident began after Corrections Officer Kirk Smith submitted a complaint to Captain McConnell regarding plaintiff's actions while he and Smith were on duty.  Kirk alleged

that plaintiff had berated and belittled two inmates. Plaintiff denied that he berated or belittled any inmate. Indeed, plaintiff wrote a misconduct report against one of the inmates that alleged the inmate refused to give plaintiff his identification when told to do so and that other inmates came out of their cells to cheer the inmate on. Smith stated that plaintiff's grievance was false because no prisoners came out of their cells and the inmate in question was willing to give his I.D. to Smith.

Defendant again launched an internal affairs investigation, which concluded that Smith's version of events was accurate and that plaintiff had treated inmates inhumanely. It was further determined that plaintiff had filed a false misconduct report. Warden Klee agreed with the findings of the internal affairs investigation and recommended plaintiff be terminated. Warner agreed, and plaintiff's employment with defendant was terminated.

Plaintiff then filed this present action, raising one count of sex discrimination under the Michigan Civil Rights Act (MCRA), MCL 37.2101 *et seq.*, one count of retaliation under the MCRA, and one of retaliation for filing a worker's compensation claim. Plaintiff thereafter filed an amended complaint that only alleged the gender discrimination and retaliations claims under the MCRA. Defendant moved for summary judgment on both counts of defendant's complaint under MCR 2.116(C)(10). Following a hearing, the trial court concluded that there was no disparate treatment in the Markgraff incident. The trial court also concluded that there was no other comparable employee in plaintiff's position. The trial court stated it could not fault defendant for not taking actions regarding some of plaintiff's complaints because it never had any knowledge of them. The trial court also found that there was no evidence Captain McConnell had any influence on the disciplinary decisions made. Thereafter, an order was entered granting defendant's motion and dismissing plaintiff's case. Plaintiff argues that the summary dismissal was error.

## II. STANDARD OF REVIEW

This Court reviews a trial court's grant of summary disposition de novo. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). In a motion under MCR 2.116(C)(10), the court considers the evidence in a light most favorable to the non-moving party to determine whether the moving party is entitled to judgment as a matter of law. *Id.* at 120.

## III. ANALYSIS

### A. PLAINTIFF'S SEX-DISCRIMINATION CLAIM

The MCRA states that an employer shall not "discriminate against an individual with respect to employment . . . because of religion, race, color, national origin, age, sex, height, weight, or marital status." MCL 37.2202(1)(a). If a plaintiff is able to present direct evidence of bias, the plaintiff can "prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). However, because in many cases "no direct evidence of impermissible bias can be located," the plaintiff can "present a rebuttable prima facie case on the basis of proofs from which a factfinder

could *infer* that the plaintiff was the victim of unlawful discrimination." *Id.* (emphasis in original).

In order to establish a prima facie case of discrimination, an employee must show that he was "(1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct." *Town v Mich Bell Tel Co*, 455 Mich 688, 695; 568 NW2d 64 (1997). In order to establish that he is similarly situated to others outside the protected class, the plaintiff must show that "all of the relevant aspects of his employment situation were nearly identical to those of [a co-worker's] employment situation." *Id.* at 699-700.

A presumption of discrimination arises once a plaintiff established a prima facie case. *Hazel*, 464 Mich at 463. Once this presumption arises, "the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Id.* at 464. Once the defendant articulates such a legitimate nondiscriminatory reason, the plaintiff, in order to survive a motion for summary disposition, "must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is 'sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff.' " *Id.* at 465, quoting *Lytle v Malady (On Rehearing)*, 458 Mich 153, 176; 579 NW2d 906 (1998). "[A] plaintiff must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for unlawful discrimination." *Hazel,* 464 Mich at 465-466. In the present case, plaintiff has not presented any direct evidence that defendant took an adverse employment action against him because he is male. Instead, plaintiff seeks to establish a rebuttable prima facie case of discrimination.

There is no dispute that plaintiff is a member of a protected class, was subject to an adverse employment decision, and was qualified for the position. The parties do dispute whether others similarly situated and outside the protected class were treated differently from plaintiff. Again, to satisfy this element, plaintiff must show that another employee not subject to an adverse employment action was in a position "nearly identical" to his own in "all relevant aspects." *Town*, 455 Mich at 699-700.

With respect to Incident Number 1, plaintiff argues that he and Markgraff were similarly situated, but he was disciplined and she was not. Plaintiff's argument that he and Markgraff were similarly situated is premised on the fact that the anonymous prisoner complaint stated the two were equal participants in the observed behavior. However, the ultimate decision-maker, Kathy Warner, testified that she did not consider the prisoner complaint in making her discipline determination. Additionally, an internal affairs investigation took place where multiple parties and witnesses were all questioned. The report concluded that plaintiff had committed harassment but did not find any violations against Markgraff. In order for plaintiff to meet the similarly situated prong plaintiff would have to show a female employee who had similarly substantiated allegations of wrongdoing was disciplined less severely. In this case, Markgraff

-4-

did not have allegations substantiated by an internal affairs investigation, and therefore, cannot be said to be in an employment situation that is nearly identical to plaintiff's in all aspects.[1]

Even if plaintiff were able to establish a prima facie case, defendant has a nondiscriminatory reason for treating Markgraff differently from plaintiff, that being that an internal affairs investigation substantiated allegations against plaintiff but did not substantiate any allegations against Markgraff. Plaintiff attempts to argue that defendant's stated nondiscriminatory reason for its actions has no basis in fact by challenging the underlying findings of the internal affairs investigation. This is akin to challenging defendant's professional judgment, which cannot create a genuine factual dispute on the issue of pretext. *Dubey v Stroh Brewery Co*, 185 Mich App 561, 565-566; 462 NW2d 758 (1990).[2] See also *Town*, 455 Mich at 704 ("The plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.").

## B. PLAINTIFF'S RETALIATION CLAIM

The MCRA states that an employer shall not "[r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under this act." MCL 37.2701(a). Retaliation claims, like discrimination claims, can be proved by direct evidence of retaliation. See *Cuddington v United Health Servs, Inc*, 298 Mich App 264, 275-276; 826 NW2d 519 (2012). In analyzing a direct evidence claim, the plaintiff first "bears the burden of persuading the trier of fact that the employer acted with illegal discriminatory animus." *Harrison v Olde Fin Corp*, 225 Mich App 601, 612; 572 NW2d 679 (1997). Additionally, the plaintiff must prove that he was qualified for the position and "that the discriminatory animus was causally related to the decisionmaker's action." *Id.* at 613. Once these elements are met, the employer is not entitled to summary disposition merely by stating a nondiscriminatory reason for its actions. *Id.* In the present case, plaintiff's direct evidence argument is premised on the notion that McConnell's discriminatory animus caused plaintiff's discipline and termination.

Plaintiff cites to *Staub v Proctor Hosp*, 562 US 411; 131 S Ct 1186; 179 L Ed 2d 144 (2010), in which the United States Supreme Court held that if a supervisor performs a prohibited act that was intended by the supervisor to cause an adverse employment action, the employer may be liable even if the ultimate employment decision was made by an unbiased decision-

---

[1] While plaintiff did make allegations to a union official about Markgraff's alleged conduct, there is nothing in the record that suggests plaintiff submitted this complaint to defendant's managers at the facility where he worked.

[2] A plaintiff can show an employer's stated reason was pretextual for unlawful discrimination "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Dubey*, 185 Mich App at 565-566.

maker after an independent investigation. *Id.* at 1192-1194.[3] *Staub* was concerned with a situation where an ultimate decision-maker would make a decision based on the performance assessment of other supervisors. *Id.* at 1192-1193. The Court reasoned that if the supervisor conducting the performance evaluations had an unlawful discriminatory motive in compiling the evaluations relied upon by the ultimate decision-maker, the employer should not be shielded from liability simply because the ultimate decision-maker did not harbor the same bias. *Id.* at 1193. At issue was a specific portion of federal law that stated that a plaintiff establishes a claim if discrimination was merely "a motivating factor" for the employment decision, even if other factors also motivated the employer. *Id.* at 1190-1191.

The MCRA does not have a provision such as the one at issue in *Staub*. While this Court has looked favorably on federal interpretations in direct evidence cases, *Harrison*, 225 Mich App at 610, this Court has also stated that it "must not defer to federal interpretations when doing so would be inconsistent with any portion of our Legislature's enactment," *Barrett v Kirtland Community College*, 245 Mich App 306, 314-315; 628 NW2d 63 (2001). While there is authority that states an employer is liable if discrimination is a motivating factor, *Lytle v Malady*, 458 Mich 153, 175-176; 579 NW2d 906 (1998), retaliation cases continue to require a showing that retaliation must be a significant factor, *Barrett*, 245 Mich App at 315. See also *Univ of Tex Southwestern Med Ctr v Nassar*, ___ US ___; 133 S Ct 2517, 2532-2533; 186 L Ed 2d 503 (2013) (instructing that in retaliation claims, as opposed to discrimination claims, the "traditional principles of but-for causation" not the "motivating factor" standard would apply).

Viewing the factual issues in plaintiff's favor, *Maiden*, 461 Mich at 120, we assume that McConnell did in fact tell plaintiff to drop his lawsuit or risk losing his job. However, plaintiff has not shown that McConnell's actions were the cause of any adverse employment action. Plaintiff argues that McConnell submitted fraudulent memorandums and compiled false allegations. However, the incidents were investigated and substantiated by internal affairs agents that McConnell did not have control over. Warner relied on the findings of the independent investigations, not the findings of a biased supervisor, that considered not only McConnell's version of events, but also plaintiff's version and the accounts of multiple witnesses in each situation.

Absent direct evidence of retaliatory animus, a plaintiff can establish a circumstantial evidence case by showing:

> "(1) that the plaintiff engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action." [*Barrett*, 245 Mich App at 315.]

---

[3] This legal principle articulated in *Staub* is referred to in federal jurisprudence as the "cat's paw theory." *Chattman v Toho Tenax America, Inc*, 686 F3d 339, 351 (CA 6, 2012).

In establishing the causation element, the plaintiff is required to show that "participation in activity protected by the [M]CRA was a 'significant factor' in the employer's adverse employment action, not just that there was a causal link between the two." *Id.*

Plaintiff argues that the causation element is satisfied because McConnell's alleged retaliatory animus is attributable to Warner pursuant to the "cat's paw" doctrine. However, for the reasons previously mentioned, McConnell's retaliatory animus did not cause Warner's decision to take adverse employment action against plaintiff, and, therefore, the cat's paw doctrine is not applicable.

The trial court did not err in granting defendant's motion for summary disposition under MCR 2.116(C)(10) on both counts of plaintiff's complaint and in dismissing plaintiff's case.

Affirmed.

/s/ Mark T. Boonstra
/s/ David H. Sawyer
/s/ Peter D. O'Connell