# STATE OF MICHIGAN

# COURT OF APPEALS

JEAN BERRY,

Plaintiff-Appellant,

v

IN YOUR GOLDEN YEARS, LLC,

Defendant-Appellee.

UNPUBLISHED
December 29, 2015

No. 323188
Bay Circuit Court
LC No. 13-003399-NZ

Before: SHAPIRO, P.J., and O'CONNELL and WILDER, JJ.

PER CURIAM.

In this whistleblower action, plaintiff appeals by leave granted[1] the trial court's order granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of defendant. We conclude that the trial court failed to consider plaintiff's direct evidence of a retaliatory motive in her termination of employment, and that a genuine issue of material fact exists regarding whether plaintiff was fired because she engaged in protected activity under the Whistleblower Protection Act (WPA), MCL 15.361 *et seq*. Thus, we reverse and remand this case for further proceedings.

## I. PROCEDURAL AND FACTUAL SUMMARY

Defendant hired plaintiff to work as a home health aide in June 2012. Plaintiff reported directly to Judith Girardin, defendant's owner. Plaintiff alleged that she originally worked about 36 hours per week, caring for the same client (an Alzheimer's patient) six days a week. In early fall of 2012, the client's husband died, requiring plaintiff's hours to increase to 48 hours per week, according to plaintiff. Girardin testified that plaintiff worked 48 hours per week for "a period of time" because the client had Alzheimer's, and it would confuse the client to exchange aides. Girardin also stated that plaintiff had "begged and cried" to be given extra work hours.

In March 2013, plaintiff requested that defendant pay her overtime for the hours worked in excess of 40 per week. Girardin initially refused to pay plaintiff overtime because it was

---

[1] *Berry v In Your Colden Years LLC*, unpublished order of the Court of Appeals, entered December 22, 2014 (Docket No. 323188).

-1-

against company policy. Plaintiff then filed a complaint with the Wage and Hour Division of the Department of Licensing and Regulatory Affairs. On April 10, 2013, the State sent Girardin a letter notifying her of plaintiff's complaint alleging a violation of Michigan's Minimum Wage Law and requesting $447.75 for payment of her overtime hours. Upon receiving the notification, plaintiff was paid for her overtime hours.

Plaintiff alleges that on April 15, 2013, Girardin called her while she was working at a client's home and stated, "you will never work overtime again," and "I really hope that you don't need anything because paybacks are Hell." Girardin testified that she may have called plaintiff, but she did not remember making those statements. Plaintiff also alleges that the following Wednesday, when she attempted to pick up her paycheck as she had routinely done, Girardin told her that she could no longer continue this practice. Instead, plaintiff was instructed to pick her check up from the mailbox on the back of defendant's building after 5:00 p.m. on Thursdays, the scheduled payday. Plaintiff claims that Girardin knew that it was a "major benefit" for her to pick up her checks early because plaintiff was short on money. Girardin did not recall telling plaintiff that she could no longer pick her checks up on Wednesdays.

Plaintiff claims that a work schedule for May 2013 was attached to her April 25, 2013 paycheck, and that "for the first time" her hours had been cut from 41 to 27 hours per week. Girardin explained that she had not known that she was breaking the law in allowing plaintiff to work overtime and not paying her an overtime rate, and thus, she hired Rebecca Bills to supplement the hours necessary for the Alzheimer's client's care. Bills averred that Girardin told her that she was hired because plaintiff was "trying to get [Girardin] in trouble with the State and that Ms. Girardin planned on terminating" plaintiff. Plaintiff claimed that Girardin knew that plaintiff depended on her income and needed additional hours, and even after Bills was terminated on May 29, 2013, plaintiff was not offered her hours. The client's daughter, Joanie Herber, submitted an affidavit in which she explained that although Girardin had originally spoke very highly of plaintiff, Herber noticed that there was a change in Girardin's attitude toward plaintiff in the summer or spring of 2013. Herber explained that "Ms. Girardin went from really liking Ms. Berry, to really saying that she wanted to get rid of Ms. Berry." Herber also explained that she was contacted by Girardin to sign an affidavit stating that she had requested plaintiff's termination. She said she refused to do so because it was not true.

Plaintiff claimed that she continued to have difficulty getting her paychecks and was treated in a "disparate, hostile and more adverse manner" than other employees. By the summer of 2013, her hours were fluctuating, and she was written up for conduct that was not against company policy or was frequently done by other employees without penalty, as well as for things she had not done. Before plaintiff filed this lawsuit and the complaint with the State, plaintiff was written up for being late once and for being unable to travel to work on another day. Moreover, Girardin's December 18, 2012 evaluation of plaintiff had rated her "excellent" on Attendance/Punctuality, as well as Initiative, Communication/Listening Skills, and Dependability, and "good" on Job Knowledge. The statement, "Great job Jean," is handwritten on the evaluation, and plaintiff was informed she would be getting a raise.

Plaintiff's original complaint was filed on June 26, 2013, before she was terminated. Plaintiff alleged a violation of the WPA, claiming that Girardin reduced her hours and was unfairly treating plaintiff because she filed a complaint with the State regarding Girardin's

refusal to pay overtime. Subsequently, the trial court allowed plaintiff to amend her complaint because the situation had evolved, i.e., plaintiff was terminated on February 14, 2014. On March 10, 2014, defendant filed a motion for summary disposition, arguing that plaintiff failed to establish that an adverse employment action occurred.

The trial court concluded that plaintiff established a prima facie case of impermissible retaliation under the WPA. However, the court granted summary disposition in favor of defendant because it found sufficient defendant's proffered legitimate reasons for terminating plaintiff's employment. The court concluded that plaintiff offered nothing but speculation to establish that the reasons for her termination were a pretext for retaliation.

## II. ANALYSIS

At issue is whether the trial court erred in granting summary disposition in favor of defendant under MCR 2.116(C)(10). A trial court's ruling on a motion for summary disposition is reviewed de novo. *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013). "A motion for summary disposition brought pursuant to MCR 2.116(C)(10) tests the factual support for a claim." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 474-475; 776 NW2d 398 (2009). The moving party "has the initial burden of supporting its position with affidavits, depositions, admissions, or other admissible documentary evidence[.]" *Id*. at 475. The burden then shifts to the nonmoving party to "go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. (citation and internal quotation marks omitted). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

Plaintiff asserts a claim under § 2 of the WPA, which states as follows:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362.]

Pursuant to MCL 15.362, a plaintiff must establish the following to prove his or her prima facie case: "(1) he or she was engaged in protected activity as defined by the act, (2) he or she suffered an adverse employment action,[2] and (3) a causal connection exists between the

---

[2] Our Supreme Court recently clarified that the WPA does not expressly include the term "adverse employment action," and thus, "a plaintiff's demonstration of some abstract 'adverse

protected activity and the adverse employment action." *Whitman v City of Burton*, 493 Mich 303, 313; 831 NW2d 223 (2013). The parties do not dispute that plaintiff engaged in protected activity when she reported Girardin's failure to pay overtime. However, there is a dispute regarding what actions in this case constitute adverse employment actions and whether there is a genuine issue of material fact regarding causation.

Plaintiff argues that the trial court erroneously limited its consideration of Girardin's alleged adverse employment actions to plaintiff's eventual termination. Plaintiff asserts that before she was terminated, Girardin reduced her hours and employed Bills to replace her. In *Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 364; 597 NW2d 250 (1999), this Court defined an adverse employment action as a decision that is "materially adverse in that it is more than mere inconvenience or an alteration of job responsibilities[;]" there must be "some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions as to the desirability of one position over another are not controlling." (Citations, internal quotation marks, and alteration omitted.) See also *Peña v Ingham Co Rd Comm*, 255 Mich App 299, 312; 660 NW2d 351 (2003) (stating that work places are not "idyllic retreats," and there is no exhaustive list of adverse employment actions, but they take the "form of an ultimate employment decision") (citations omitted).

Plaintiff readily admitted in her deposition that defendant's policy capping employee's hours at 40 hours per week is reasonable because defendant does not receive reimbursement for paid overtime. Further, plaintiff admitted that Girardin justifiably hired Bills to supplement the hours of care that plaintiff's client needed, which necessarily meant that Bills and plaintiff would have to equitably split the hours in some manner. That meant that plaintiff would not be working 40 hours per week. Moreover, defendant's employee handbook expressly states that employees are not guaranteed full-time hours. Accordingly, the reduction of her hours was not a "materially adverse" employment decision, given the particular nature of plaintiff's line of work. See *Peña*, 255 Mich App at 312 (indicating that the determination of adverse employment decisions may hinge on the aspects of employment unique to a particular situation).

Plaintiff further argues that, before she was terminated, she was forced to wait an extra day to pick up her paycheck. To the extent that plaintiff asserts that this action is an adverse employment action for the purposes of the WPA, it amounts to an inconvenience, not a material adverse employment change or an ultimate employment decision. See *Wilcoxon*, 235 Mich App at 364. That is not to diminish the fact that plaintiff may have very well needed her check on the particular Wednesday following Girardin's notice of plaintiff's report to the State. However, for the purposes of establishing an actionable employment decision under the WPA, the adversity must be objectively material. *Id*.[3]

_____

employment action' as that term has developed in other lines of caselaw will not be sufficient." *Wurtz v Beecher Metro Dist*, 495 Mich 242, 251 n 14; 848 NW2d 121 (2014). Nevertheless, the term may be used as helpful shorthand for ways that an employer may discriminate under the WPA. *Id*.

[3] To the extent that plaintiff argues that she was treated differently than other employees with respect to when she could pick up her check and Girardin's selective enforcement of cell phone

Plaintiff next argues that because her WPA claim involved evidence of direct discrimination, the trial court erred in only analyzing this case pursuant to the burdening shifting framework established in *McDonnell Douglas v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1972). Under the *McDonnell Douglas* test, a plaintiff may "present a rebuttable prima facie case on the basis of proofs from which a factfinder could infer that the plaintiff was the victim of unlawful retaliation." *Debano-Griffin*, 493 Mich at 176 (citations, internal quotation marks, alteration, and emphasis omitted). Where a presumption of retaliation arises, the employer may nevertheless be entitled to summary disposition if it presents a legitimate reason for its employment decision. *Id*. It would then be the plaintiff's burden to show that "a reasonable fact-finder could still conclude that the plaintiff's protected activity was a 'motivating factor' for the employer's adverse action." *Id*. (citation omitted). A plaintiff can establish pretext by showing that the defendant's reasons have no basis in fact, the reasons did not actually motivate the defendant, or if they did, the reasons were insufficient to justify the employment action. *Id.* at 180. In that regard, "a 'plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.' " *Id.*, quoting *Hazle v Ford Motor Co*, 464 Mich 456, 476; 628 NW2d 515 (2001).

However, "[i]t is well settled that if a plaintiff presents direct evidence of discrimination, she need not proceed under the *McDonnell Douglas* formula." *Christopher v Stouder Mem Hosp*, 936 F2d 870, 879 (CA 6, 1991).[4] Direct evidence is " 'evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.' " *Hazle*, 464 Mich at 462, quoting *Jacklyn v Schering-Plough Healthcare Prod Sales Corp*, 176 F3d 921, 926 (CA 6, 1999). Direct evidence has been defined as excluding "stray remarks in the workplace," "statements by nondecisionmakers," or "statements by decisionmakers unrelated to the decisional process itself." *Price Waterhouse v Hopkins*, 490 US 228, 277; 109 S Ct 1775; 104 L Ed 2d 268 (1989). "However, direct evidence may include employer remarks that reflect a discriminatory attitude, . . . or that demonstrate a discriminatory animus in the decisional process." *Kneibert v Thomson Newspapers, Mich, Inc*, 129 F3d 444, 452 (CA 8, 1997) (citation and internal quotation marks omitted).

> Factors to consider in assessing whether statements are "stray remarks" include: (1) whether they were made by a decision maker or an agent within the scope of his employment, (2) whether they were related to the decision-making process, (3) whether they were vague and ambiguous or clearly reflective of

polices and rules regarding talking about personal matters with clients, any alleged disparate treatment is properly considered in determining whether a sufficient causal link exists between the established protected activity and adverse employment decision, which includes the consideration of the employer's intent as evidenced by any disparate treatment. See *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 140; 666 NW2d 186 (2003); *Meagher v Wayne State Univ*, 222 Mich App 700, 709; 565 NW2d 401 (1998).

[4] For the purposes of analyzing WPA claims, reliance on caselaw involving claims based on other antiretaliatory statutes is proper. *Debano-Griffin*, 493 Mich at 175-176. Further, while not binding, Michigan courts have often turned to federal caselaw for guidance relating to such claims. See, e.g., *Meagher*, 222 Mich App at 710.

discriminatory bias, (4) whether they were isolated or part of a pattern of biased comments, and (5) whether they were made close in time to the adverse employment decision. *Cooley v Carmike Cinemas, Inc*, 25 F3d 1325, 1330 (CA 6, 1994); *Krohn v Sedgwick James, Inc*, 244 Mich App 289, 292; 624 NW2d 212 (2001). [*Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 136 n 8; 666 NW2d 186 (2003).]

In this case, plaintiff argues that her affidavit, coupled with those of Bills and Herber, are direct evidence of Girardin's retaliatory motive. However, Herber's affidavit does not provide direct evidence that Girardin made employment decisions adversely affecting plaintiff based on the fact that plaintiff reported Girardin's failure to pay overtime rates to the State in March 2013. Herber's affidavit asserts that Girardin's opinion of plaintiff changed in the summer or spring of 2013, and she went from really liking plaintiff to wanting to "get rid" of her. However, assuming that statement to be true, an inference based on the timing of Girardin's alleged change in attitude is required to show that Girardin wanted to fire plaintiff because of the protected activity plaintiff engaged in during March and April 2013. Thus, this statement is not direct, but rather, circumstantial evidence of Girardin's improper motives. See *Shaw v City of Ecorse*, 283 Mich App 1, 15; 770 NW2d 31 (2010) (stating that "[a] temporal connection between protected activity and an adverse employment action does not, in and of itself, establish a causal connection, . . . but it is evidence of causation").

Nonetheless, plaintiff and Bills aver that Girardin made statements that expressly link plaintiff's protected activity to Girardin's intent to terminate plaintiff. Plaintiff claims that Girardin called her immediately after she received notice that plaintiff had filed a complaint with the State regarding her overtime pay, threatening that "paybacks are Hell." Plaintiff's affidavit obviously serves her interests in this case, but that does not mean that it disingenuous or deceitful. Moreover, Bills's affidavit corroborates plaintiff's allegations. Bills, who was hired directly following plaintiff's complaint filed with the State, stated that Girardin told her that she would have to "work more hours because Jean Berry was trying to get her into trouble with the State and that Ms. Girardin planned on terminating Jean Berry." Girardin was the primary decision-maker for defendant, and this statement clearly reflects a retaliatory attitude. Indeed, it evidences concrete actions being taken by Girardin to "payback" plaintiff for reporting the overtime matter to the State. Thus, Bills's affidavit is direct evidence of Girardin's motive to retaliate against plaintiff because she engaged in protected activity.

Admittedly, however, Girardin did not actually terminate plaintiff until February 2014, almost a year after plaintiff filed her complaint relating to overtime with the State. Defendant asserts that this interval shows that the protected activity was an isolated remark, not direct evidence of discrimination. However, in this case, that Girardin may have formed an improper motive almost a year before acting on that motive does not necessarily lead to the conclusion that Bills's assertions are not direct evidence, especially in light of the fact that Bills's assertions are consistent with the retaliatory comments that plaintiff alleges. Where the plaintiff meets his or her burden in providing "direct proof" of causation, "the case ordinarily must be submitted to the factfinder for a determination whether the plaintiff's claims are true." *Harrison v Olde Fin Corp*, 225 Mich App 601, 613; 572 NW2d 679 (1997).

The fact that Girardin did not terminate plaintiff until February 2014 and defendant presented proofs in the trial court that plaintiff violated several company policies in December 2013 and February 2014 means that this may be a mixed-motive case, "i.e., where the adverse employment decision could have been based on both legitimate and legally impermissible reasons . . . ." *Sniecinski*, 469 Mich at 133. In such a case, this Court has held that "the plaintiff always bears the burden of persuading the trier of fact that the employer acted with illegal discriminatory animus" and establishing "direct proof that the discriminatory animus was causally related to the decisionmaker's action." *Harrison*, 225 Mich App at 612-613. See also *Sniecinski*, 469 Mich at 134-135 (stating that regardless of whether a plaintiff relies on direct or circumstantial evidence, "a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision").

Our Supreme Court has explained that in a mixed-motive case, "a plaintiff must prove that the defendant's discriminatory animus was more likely than not a 'substantial' or 'motivating' factor in the decision." *Id.* at 133. See also *Veenstra v Washtenaw Country Club*, 466 Mich 155, 164; 645 NW2d 643 (2002) ("Evidence of mixed motives . . . is sufficient to withstand summary disposition. In such a case, the impermissible factor must be a determining factor.").

We conclude that a genuine issue of material fact exists in that regard, and thus, the trial court erred in granting summary disposition in favor of defendant. The trial court, in applying the *McDonnell Douglas* test, concluded that plaintiff presented no evidence refuting defendant's articulated legitimate justifications for firing plaintiff and did not meet her burden to establish that those reasons were a pretext for retaliation. However, a jury could find plaintiff's and Bills's assertions credible, see *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994) (stating that a trial court may not weigh the credibility of witnesses in reviewing a motion for summary disposition), and reasonable minds could differ regarding whether plaintiff's protected activity was a substantial or motivating factor in Girardin's termination of plaintiff, see *Innovative Foster Care*, 285 Mich App at 475. Defendant presented evidence of plaintiff's violations of company policies that could have served as the basis for her termination. But that does not rule out the possibility that Girardin was nevertheless motivated to fire plaintiff because she reported a violation of law to the State. Girardin flatly denies that she made the statements alleged by plaintiff and Bills and that she thereafter treated plaintiff with hostility as asserted by plaintiff and Herber. Such evidence would have critical role in a fact-finder's ultimate determination of the case.

Furthermore, the record reveals that there was a marked difference between the employment-related evaluations from before and after plaintiff reported defendant's violation of law to the State. Specifically, Girardin's stated reasons for formalizing plaintiff's violations of company policy (to which plaintiff claims she was treated differently than other employees) occurred not only after she reported the violation of law to the State, but also after she filed this lawsuit.

Accordingly, viewing the evidence in a light most favorable to plaintiff, defendant is not entitled to summary disposition as a matter of law because genuine issues of material fact exist regarding the causation requirement of plaintiff's WPA claim. See *id*.

We reverse the trial court's order granting summary disposition and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.


/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell