*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL T. THOMAS, SR.,

      Plaintiff/Counterdefendant-Appellee,

v

CAIR MICHIGAN, INC.,

      Defendant,

and

ALI R. JABER,

      Defendant/Counterplaintiff/Third-
      Party Plaintiff-Appellant/Cross-
      Appellee,

and

HENRY FORD COLLEGE,

      Third-Party Defendant-
      Appellee/Cross-Appellant.

UNPUBLISHED
July 13, 2023

No. 362387
Wayne Circuit Court
LC No. 20-016064-PZ

Before: PATEL, P.J., and BOONSTRA and RICK, JJ.

PER CURIAM.

Defendant/counterplaintiff/third-party plaintiff Ali R. Jaber (Jaber) appeals by right, and third-party defendant Henry Ford College cross-appeals by right, the judgment in favor of plaintiff/counterdefendant Michael T. Thomas, Sr. (Thomas) entered by the trial court after a jury trial. More specifically, Jaber's appeal is of the trial court's pre-trial order granting Thomas's and Henry Ford College's motions for summary disposition of Jaber's counterclaims and third-party claims under MCR 2.116(C)(10). Henry Ford College's appeal is of the trial court's denial of its post-trial request for case-evaluation sanctions. We affirm in both appeals.

# I. PERTINENT FACTS AND PROCEDURAL HISTORY

Jaber, who is Muslim and of Lebanese descent, attended Henry Ford College in 2019 and enrolled in a business course taught by Thomas. Jaber was interested in raising money to assist those living in poverty in Lebanon, and was aware that Thomas was involved in various nonprofit organizations. In October 2019, Jaber stayed after class and asked Thomas for advice about getting help with using his Facebook page to send money to people in need in Lebanon. According to Jaber, Thomas responded by engaging in an Islamophobic and anti-Lebanese rant. Two other students, D'El Rapp and Mohamad Dbouk, overheard some of the conversation. Rapp testified that she interfered to defend Jaber, while Dbouk claimed he thought Jaber was being too sensitive if he was offended by the comments.

Jaber eventually complained to Henry Ford College about the incident. He was given the option to transfer to a new course taught by a different professor, or to withdraw from the course. Jaber initially thought he wanted to transfer, but was informed by the new professor that he was unlikely to be successful in the class because of the late transfer. Jaber decided to withdraw. Representatives of Henry Ford College informed Jaber that it was too late to receive a refund and that his withdrawal would be noted in his transcript. Jaber contacted defendant, the Michigan Chapter of the Council for American-Islamic Relations (CAIR), for its support in asserting his rights. CAIR and Jaber held a press conference during which the accusations against Thomas were repeated; this received news coverage.

Henry Ford College eventually began an investigation into the alleged comments made by Thomas. Lynn Borczon (Borczon), the Assistant Director of Human Resources for Henry Ford College, initially headed the investigation. Thomas denied saying anything Islamophobic or anti-Lebanese in nature. Instead, Thomas claimed that he was giving advice to Jaber about the dangers of sending money overseas. Thomas sought to ensure that Jaber was aware of certain presumptions other people in society might make when hearing that Jaber was sending money to Lebanon. Thomas insisted that he did not hold any Islamophobic or anti-Lebanese beliefs.

About a week after the incident was reported, Henry Ford College decided to employ an independent party, Thomas Fleury (Fleury), to conduct the investigation. After interviewing Jaber, Thomas, Dbouk, and some others, Fleury concluded that Thomas's comments were not Islamophobic or anti-Lebanese. Fleury did not interview Rapp. Henry Ford College closed the investigation on the basis of Fleury's findings, and Thomas was not disciplined.

This litigation began when Thomas sued Jaber and CAIR, alleging that they had defamed him and tortiously interfered with his business relationship with Henry Ford College. Jaber filed a counterclaim and third-party complaint, alleging that Thomas and Henry Ford College had violated his rights under the Elliott-Larsen Civil Rights Act (CRA), MCL 37.2101 *et seq.* Thomas and Henry Ford College moved for summary disposition of Jaber's claims in November 2021. They argued that Thomas was not a "decision-maker" regarding Jaber's rights and privileges while a student at Henry Ford College. Jaber argued that he had provided direct evidence of discrimination, which warranted submitting the case to a jury. Alternatively, he asserted that he had offered sufficient indirect evidence of discrimination to survive the motions for summary disposition. While the motions for summary disposition were pending, the parties underwent case evaluation in December 2021. The case evaluators issued an award on December 3, 2021, valuing

Jaber's third-party complaint against Henry Ford College at $100. Henry Ford College accepted the award. Jaber rejected the award by failing to respond by the January 4, 2022 deadline.

At a motion hearing on January 18, 2022, the trial court agreed with Thomas and Henry Ford College and orally granted their motions for summary disposition. The trial court subsequently entered written orders memorializing these decisions. Shortly thereafter, Henry Ford College moved the trial court for an award of case-evaluation sanctions under MCR 2.403(O). The trial court denied the motion. This appeal and cross-appeal followed.

## II. MAIN APPEAL

## A. STANDARD OF REVIEW

"This Court [] reviews de novo decisions on motions for summary disposition brought under MCR 2.116(C)(10)." *Pace v Edel-Harrelson*, 499 Mich 1, 5; 878 NW2d 784 (2016). A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint . . . ." *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper when there is no "genuine issue regarding any material fact." *Id*. "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted). We review de novo issues of statutory interpretation. *Saugatuck Dunes Coastal Alliance v Saugatuck Twp*, 509 Mich 561, 577; 983 NW2d 798 (2022).

## B. ANALYSIS

Jaber argues that the trial court improperly granted summary disposition in favor of Thomas and Henry Ford College. We disagree.

The CRA proscribes certain discriminatory conduct, being "designed to target the prejudices and biases borne against persons because of their membership in a certain class, and . . . to eliminate the effects of offensive or demeaning stereotypes, prejudices, and biases." *Doe v Alpena Pub Sch Dist*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 359190); slip op at 3 (quotation marks and citations omitted, alteration in original). The CRA provides in relevant part:

An educational institution shall not do any of the following:

(a) Discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex.

(b) Exclude, expel, limit, or otherwise discriminate against an individual seeking admission as a student or an individual enrolled as a student in the terms,

-3-

conditions, or privileges of the institution, because of religion, race, color, national origin, or sex. [MCL 37.2402(a) and (b).]

"This Court has recognized the lack of education-based []CRA claims," and has concluded that "it is appropriate to turn to employment-based []CRA cases for guidance." *Doe*, ___ Mich App at ___; slip op at 7, citing *Fonseca v Michigan State Univ*, 214 Mich App 28, 30; 542 NW2d 273 (1995).

The ultimate question in these cases "is whether the plaintiff was the victim of intentional discrimination." *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 606; 886 NW2d 135 (2016). "Michigan courts have recognized two basic theories for establishing a prima facie case of [] discrimination: showing intentional discrimination or proving disparate treatment." *Major v Village of Newberry*, 316 Mich App 527, 547; 892 NW2d 402 (2016), quoting *Lytle v Malady (On Rehearing)*, 458 Mich 153, 181 n 31; 579 NW2d 906 (1998). Stated differently, "[p]roof of discriminatory treatment in violation of the CRA may be established by direct evidence or by indirect or circumstantial evidence." *Major*, 316 Mich App at 540, quoting *Sniecinski v Blue Cross & Blue Shield of Michigan*, 469 Mich 124, 132; 666 NW2d 186 (2003).

"In some discrimination cases, the plaintiff is able to produce direct evidence of [unlawful] bias. In such cases, the plaintiff can go forward and prove unlawful discrimination in the same manner as a plaintiff would prove any other civil case." *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001). However, in cases where "there is no direct evidence of impermissible bias, plaintiff's claim of intentional discrimination must proceed under the *McDonnell Douglas*[1] burden-shifting framework." *White v Dep't of Transportation*, 334 Mich App 98, 107; 964 NW2d 88 (2020) (quotation marks and citation omitted). In either case, " 'a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision.' " *Major*, 316 Mich App at 542, quoting *Sniecinski*, 469 Mich at 134-135.

1. DIRECT EVIDENCE OF DISCRIMINATION

Jaber argues that the trial court incorrectly concluded that he had not presented direct evidence of discrimination by Thomas and Henry Ford College. "Perhaps the best *general* definition of direct evidence is that it is evidence that proves impermissible discriminatory bias without additional inference or presumption." *Hecht*, 499 Mich at 607 n 34. For example, in *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 538-539; 620 NW2d 836 (2001), our Supreme Court determined there was direct evidence of discriminatory intent when, during the meeting in which the employee was fired, the employer told the employee "he was getting too old for this [expletive]." (Quotation marks omitted); see also *Harrison v Olde Fin Corp*, 225 Mich App 601, 610; 572 NW2d 679 (1997) (holding that "racial slurs by a decisionmaker constitute direct evidence of racial discrimination that is sufficient to get the plaintiff's case to the jury").

We note that the trial court in this case did not explicitly state that there was no direct evidence of discrimination by Thomas. Instead, the trial court determined that there was no factual

---

[1] *McDonnell Douglas Corp v Green*, 411 US 792; 93 S Ct 1817; 36 L Ed 2d 668 (1973).

support for concluding that Thomas was involved in deciding whether Jaber would have "the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution," or that Thomas had any power to "[e]xclude, expel, limit, or otherwise discriminate against . . . an individual enrolled as a student in the terms, conditions, or privileges of the institution . . . ." MCL 37.2402(a) and (b). In other words, the trial court relied on the lack of proof that Thomas was a "decision-maker" with respect to Jaber's involvement with Henry Ford College. *Harrison*, 225 Mich App at 610.

The trial court's reasoning appears to have focused on the issue of causation and whether Jaber could establish a causal link between Thomas's alleged statements and an adverse educational action. See *Major*, 316 Mich App at 542 (quotation marks and citation omitted). "Under the direct evidence test, a plaintiff must present direct proof that the discriminatory animus was causally related to the adverse [educational action]." *Sniecinski*, 469 Mich at 135. The trial court held that Jaber could not prove causation with respect to his claims against Thomas, because Thomas, not being a "decision-maker" with respect to the loss of privileges or rights at Henry Ford College, could not possibly have *caused* the alleged adverse educational actions suffered by Jaber. *Id*.; see also *Major*, 316 Mich App at 542.

Resolution of the causation issue requires analysis of what, if any, adverse educational actions were taken against Jaber. Again, turning to the employment-discrimination context, this Court previously has explained that "there is no exhaustive list of adverse employment actions . . . ." *Pena v Ingham County Rd Comm'n*, 255 Mich App 299, 311; 660 NW2d 351 (2003). Further, "what might constitute an adverse employment action in one employment context might not be actionable in another employment context." *Chen v Wayne State Univ*, 284 Mich App 172, 201; 771 NW2d 820 (2009). Therefore, whether Jaber suffered the effects of an adverse educational action "must be ascertained in light of the unique characteristics of his status . . . ." See *id*. This Court has stated that, generally,

> in order for an employment action to be adverse for purposes of a discrimination action, (1) the action must be materially adverse in that it is more than mere inconvenience or an alteration of job responsibilities, and (2) there must be some objective basis for demonstrating that the change is adverse because a plaintiff's subjective impressions as to the desirability of one position over another [are] not controlling. [*Wilcoxon v Minnesota Mining & Mfg Co*, 235 Mich App 347, 364; 597 NW2d 250 (1999) (quotation marks and citation omitted; alteration in original).]

Jaber argues that Thomas caused two interrelated adverse actions. First, Jaber claims that Thomas caused an unhealthy and discriminatory learning environment in Thomas's course. Second, as a result of this improper learning environment, Jaber alleges that he was required to choose between transferring to a new class where he was unlikely to be successful or withdrawing from the class without a refund, which also would result in a negative mark on his transcript. For his first claim, Jaber has compared his situation to employment-discrimination cases involving a hostile work environment.

Our Supreme Court has stated:

In order to establish a claim of hostile environment harassment, an employee must prove the following elements by a preponderance of the evidence:

(1) the employee belonged to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [*Chambers v Trettco, Inc*, 463 Mich 297, 311; 614 NW2d 910 (2000) (quotation marks and citation omitted).]

As explained by our Supreme Court, the existence of a hostile environment "shall be determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Quinto v Cross & Peters Co*, 451 Mich 358, 369; 547 NW2d 314 (1996) (quotation marks and citation omitted). "Consequently, to survive summary disposition, [the] plaintiff had to present documentary evidence to the trial court that a genuine issue existed regarding whether a reasonable person would find that, in the totality of circumstances, [the] comments to plaintiff were sufficiently severe or pervasive to create a hostile work environment." *Id*.

Jaber has not established that he suffered an adverse educational action in the form of a hostile learning environment. As noted, a hostile environment must be severe or pervasive enough to interfere with Jaber's educational experience. *Id*. Jaber's situation differs significantly from most hostile work environment claims. In the case of a hostile work environment, a person generally is required to continue working in that environment or face discipline by an employer. However, in the present case, it is difficult to see how one event after one class committed by one professor could cause a hostile learning *environment*. The reason for such difficulty is clear from the facts of this case. Despite the severity of the claims rendered against Thomas, Jaber continued on in school and eventually obtained his degree. By his own testimony, he never had contact with Thomas again after the single event on October 31, 2019. The situation alleged by Jaber at Henry Ford College, by its very nature, is not conducive to finding a hostile learning environment because a student will necessarily have different classes with different professors, and is generally free to transfer or drop a class rather than being compelled by economic necessity to keep attending. Jaber did not provide any evidence that his learning environment was in any way hostile after the incident with Thomas. Jaber did not establish a genuine issue of material fact regarding whether Thomas created a hostile learning environment at Henry Ford College. *Id*.

Jaber also argues that he suffered an adverse educational action by being required to choose between transferring to a new class under circumstances where he was unlikely to succeed, or

withdrawing without a refund and receiving a negative mark on his transcript. For the purposes of our analysis with respect to Thomas, it is enough to state that Thomas did not have the decision-making authority to subject Jaber to the challenged action. Indeed, Jaber does not seriously contend that Thomas was engaged in deciding what specific options would be provided to Jaber after he complained to Henry Ford College about the incident at issue. The record shows that Thomas was not involved in the decision-making process behind Henry Ford College's response to his complaint, other than to give his side of the story to investigators. Therefore, even if Jaber provided direct evidence that Thomas had made discriminatory statements on the basis of Jaber's national origin and religion, Jaber failed to meet his burden to prove a causal link between those statements and any adverse educational action Jaber faced. *Sniecinski*, 469 Mich at 135.

Jaber also argues that there was direct evidence of discrimination on behalf of Henry Ford College. Jaber has not alleged, or provided direct proof of, any discriminatory statements by anyone other than Thomas. Rather, Jaber asserts that Henry Ford College's alleged failure to conduct a fair and complete investigation was tacit approval of Thomas's discriminatory animus. In support of this theory, Jaber cites only *Campbell v Dundee Community Sch*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued July 1, 2015 (Case No. 12-cv-12327), aff'd 661 F Appx 884 (CA 6, 2016). In addition to its non-binding nature, that case does not support Jaber's position. The section of the opinion cited by Jaber discusses a claim for violation of a constitutional right under 42 USC § 1983. *Campbell*, unpub op at 8-9. Further, while the opinion discusses the possibility that a school district can be considered to tacitly approve of sexually inappropriate conduct by expressing deliberate indifference to a continuing pattern of such conduct, the plaintiff in *Campbell* failed to provide evidence supporting such a conclusion. *Id*. at 9. Importantly, the *Campbell* court specifically stated that a claim would not be permitted to go forward on a theory of tacit approval when a "plaintiff failed to identify 'a single incident of alleged harassment against any individual but herself[.]' " *Id*., quoting *Swanson v Livingston County*, 121 F Appx 80, 85 (CA 6, 2005). In this case, Jaber has only alleged one instance of discriminatory conduct by Thomas. He did not present evidence of any other instances when Thomas or another professor discriminated against him or other Lebanese or Muslim students and the students were subsequently ignored by Henry Ford College. Consequently, even if *Campbell*, unpub op at 8-9, could possibly be analogized to this case, it does not support Jaber's position.

Further, direct evidence "proves impermissible discriminatory bias without additional inference or presumption." *Hecht*, 499 Mich at 607 n 34. In this case, Jaber's claim that Henry Ford College had discriminatory bias during the investigation requires the inference of discriminatory intent behind its allegedly improper or poor investigation. Because this argument relies on an inference imputed to Henry Ford College, it is *not* direct evidence of discrimination as argued by Jaber. *Id*. Therefore, the trial court did not err when it concluded that there was no direct evidence of discrimination with respect to Henry Ford College.

## 2. INDIRECT EVIDENCE OF DISCRIMINATION

Jaber also argues that the trial court erred by granting Henry Ford College's and Thomas's motions for summary disposition on the basis of indirect evidence of discrimination. We disagree. As noted, in cases in which "there is no direct evidence of impermissible bias, [a] plaintiff's claim of intentional discrimination must proceed under the *McDonnell Douglas* burden-shifting

framework." *White*, 334 Mich App at 107 (quotation marks and citation omitted). In *Town v Michigan Bell Telephone Co*, 455 Mich 688, 695; 568 NW2d 64 (1997), our Supreme Court stated:

> The modified *McDonnell Douglas* prima facie approach requires an employee to show that the employee was (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the position, and that (4) others, similarly situated and outside the protected class, were unaffected by the employer's adverse conduct.

"Once [a] plaintiff has sufficiently established a prima facie case, a presumption of discrimination arises." *Lytle*, 458 Mich at 173. "In *Furnco Constr*[] *Corp v Waters*, 438 US 567, 577; 98 S Ct 2943; 57 L Ed 2d 957 (1978), the Court explained that the *McDonnell Douglas* prima facie case raises an inference of discrimination 'because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.' " *Hazle*, 464 Mich at 463. That presumption of discrimination, however, can be rebutted. *Id*. at 463-464.

To rebut the presumption created by a plaintiff's establishment of "a prima facie case of discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision." *Campbell v Dep't of Human Servs*, 286 Mich App 230, 241; 780 NW2d 586 (2009). Our Supreme Court has described this as "the second stage of proof," and held that the defendant employer "need not persuade the court that it was actually motivated by the proffered reasons." *Lytle*, 458 Mich at 173, quoting *Texas Dep't of Community Affairs v Burdine*, 450 US 248, 254-255; 101 S Ct 1089; 67 L Ed 2d 207 (1981). Instead, the defendant must present admissible evidence of a legitimate explanation that would be "legally sufficient to justify a judgment for the defendant." *Lytle*, 458 Mich at 174 (citation omitted). "If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the factual inquiry proceeds to a new level of specificity." *Id*., quoting *Texas Dep't of Community Affairs*, 450 US at 254-255.

"The plaintiff, for his or her claim to survive following such an articulation by the employer, must then demonstrate that the articulated reason was merely a pretext for unlawful discrimination." *Campbell*, 286 Mich App at 241. In doing so, the plaintiff "has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the discrimination was defendant's true motive in making the adverse employment decision." *Town*, 455 Mich at 696. In other words, "a plaintiff 'must not merely raise a triable issue that the employer's proffered reason was pretextual, but that it was a pretext for [unlawful] discrimination.' " *Hazle*, 464 Mich at 465-466, quoting *Lytle*, 458 Mich at 175-176 (alteration in *Hazle*).

In this case, Thomas and Henry Ford College only challenged the second and fourth elements of the required proof of a prima facie case for discrimination, arguing that Jaber did not suffer an adverse educational action and had failed to identify a similarly situated student outside of the protected classes who was treated differently. We conclude, at a minimum, that Jaber did not carry his burden with regard to the fourth element.

To establish a prima facie case of discrimination, Jaber had to present proof that "others, similarly situated and outside the protected class, were unaffected by the [] adverse conduct."

*Town*, 455 Mich at 695. To prove that another student was "similarly situated," Jaber had to present evidence of a student who experienced a situation that was "nearly identical" to Jaber's in "all of the relevant aspects . . . ." *Id.* at 699-700. In this case, Jaber did not identify any other similarly-situated persons at all. Instead, Jaber merely noted Borczon's testimony that she typically began investigations into allegations made by students within a day or two of receiving the complaint, and that Borczon did not begin the investigation into Thomas until more than a week after Jaber made his formal complaint. Jaber also argued that he was treated differently because Fleury performed an unsatisfactory investigation, which allowed Thomas to avoid being challenged on his statements that were at least partially disputed by Dbouk and Rapp. Jaber noted that Borczon testified that she saw no reason to reopen the investigation even after Rapp came forward and told a story different from Thomas's, and after learning that Fleury did not interview Rapp. Jaber contends that these general comparisons and faults in the investigation are enough to satisfy the requirement that some other student was afforded a more thorough or timely investigation, and that the other student likely was not Lebanese or Muslim.

Jaber's argument misses the point of the final element of the *McDonnell Douglas* prima facie case of discrimination. Michigan caselaw is clear that a plaintiff is required, at some point, to produce "evidence, whether direct or circumstantial, that proves that discrimination was a determining factor in the employer's decision." *Town*, 455 Mich at 697. In other words, "[d]irect evidence and the *McDonnell Douglas* formulation are simply different evidentiary paths by which to resolve the ultimate issue of the defendant's discriminatory intent." *Harrison*, 225 Mich App at 610 (quotation marks, citation, and alteration omitted). The *McDonnell Douglas* burden-shifting framework reaches the conclusion, in part, by showing that the decision-maker treated the employee differently than another employee for no other possible reason than unlawful discrimination. Pertinently, if two specifically-identified employees are in nearly identical positions, and one was subject to an adverse action while the other was not, it allows for a presumption that the reason for the distinction was discriminatory animus.

Jaber was therefore required to identify a specific student or set of students outside of his protected group. Jaber failed, however, to present any evidence of any student who made a formal complaint about a professor and received different treatment. His speculation regarding hypothetical students does not permit the inference necessary when addressing a claim under the *McDonnell Douglas* framework. *Town*, 455 Mich at 697; *Harrison*, 225 Mich App at 610. Consequently, because Jaber failed to establish a prima facie case for discrimination under the *McDonnell Douglas* framework, the trial court did not err when it granted summary disposition in favor of Thomas and Henry Ford College.

III. CROSS-APPEAL

A. STANDARD OF REVIEW

"A trial court's decision whether to grant case-evaluation sanctions under MCR 2.403(O) presents a question of law, which this Court reviews de novo." *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008). "This Court reviews de novo a trial court's decision on . . . questions of . . . the construction and application of court rules." *Citizens for Higgins Lake Legal Levels v Roscommon County Bd of Comm'rs*, 341 Mich App 161, 176; 988 NW2d 841 (2022). "[H]owever, a trial court's decision whether to apply the 'interest of justice' exception" when addressing a court

rule amended during litigation, "is reviewed for an abuse of discretion." *Centria Home Rehab, LLC v Philadelphia Indemnity Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket Nos. 359371 and 359372); slip op at 5. "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Id*. (quotation marks and citation omitted).

## B. ANALYSIS

Henry Ford College argues that trial court considered the wrong legal standards and applied the wrong version of MCR 2.403 when deciding Henry Ford College's motion for case-evaluation sanctions. We disagree.

MCR 2.403 governs the case evaluation procedure. Prior to its amendment in 2022, MCR 2.403(O) provided in relevant part:

> If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation. However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation. [MCR 2.403(O)(1), prior to amendment effective January 1, 2022.]

Substantial amendments to MCR 2.403 went into effect on January 1, 2022. Relevant to this appeal, the amendment removed subsection (O) in its entirety; what were commonly known as "case evaluation sanctions" are no longer available under the current version of the rule.

MCR 1.102 provides:

> These rules take effect on March 1, 1985. They govern all proceedings in actions brought on or after that date, and all further proceedings in actions then pending. A court may permit a pending action to proceed under the former rules if it finds that the application of these rules to that action would not be feasible or would work injustice.

Therefore, the general rule when a court rule is amended is to "apply the newly adopted court rules to pending actions unless there is a reason to continue applying the old rules." *Reitmeyer*, 237 Mich App at 337 (quotation marks and citation omitted). "However, an injustice is not present merely because a different result would be reached under the new rules. Rather, a new court rule would 'work injustice' where a party acts, or fails to act, in reliance on the prior rules and the party's action or inaction has consequences under the new rules that were not present under the old rule." *Id*. (citations omitted). This Court noted in *Reitmeyer* that "MCR 1.102 focuses on 'injustice' in the context of whether changes in rules in the midstream of the legal process have operated unfairly on one of the parties." *Id*. at 340. However, "the exception for 'injustice' must not be read too broadly, such that it encompasses nearly every case where the new and old court rules would affect a case differently." *Id*. at 339. Therefore the "injustice" exception to MCR 1.102 "must be applied narrowly and with restraint." *Id*. at 603.

In this case, the parties participated in case evaluation on December 3, 2021. The case-evaluation award was prepared on that date. The amendment to MCR 2.403(O) became effective on January 1, 2022. The parties agree that Jaber's deadline to respond to the award was January 4, 2022, and that Jaber effectively rejected the award on that day by failing to respond to it. See MCR 2.403(L)(1) and (2). About one month later, the trial court entered its written order granting summary disposition of all of Jaber's claims against Henry Ford College and dismissing the third-party complaint. Consequently, the end result of the case between Jaber and Henry Ford College was not more favorable to Jaber than was the $100 case evaluation. Under the version of the court rule in effect before January 1, 2022, Henry Ford College was entitled to seek case-evaluation sanctions. The trial court, however, applied the current version of MCR 2.403, which no longer allows for such sanctions.

Henry Ford College argues that the trial court failed to appropriately consider which version of MCR 2.403 should apply in this case. We disagree.

Henry Ford College argues that the trial court did not apply MCR 1.102 when deciding whether to apply the amended or old version of MCR 2.403. Instead, the trial court relied solely on the effective date of the amendment being on January 1, 2022, and the deadline for accepting or rejecting the award occurring on January 4, 2022. The record shows that Henry Ford College is incorrect in its assertion that the trial court applied an incorrect legal standard. Although the trial court's written opinion did not cite to MCR 1.102, it did cite to *Ligons v Crittenton Hosp*, 490 Mich 61, 88; 803 NW2d 271 (2011). In pertinent part, *Ligons* considered whether to apply an amended version of a court rule or the older version. In deciding that issue, our Supreme Court cited *Reitmeyer*, 237 Mich App at 337. *Ligons*, 490 Mich at 88 n 75. As discussed, this Court in *Reitmeyer* considered and applied MCR 1.102 in addressing a similar issue. Indeed, Henry Ford College cites to *Reitmeyer* in its brief on cross-appeal more than 10 times. The language from *Reitmeyer* quoted by our Supreme Court in *Ligons*, 490 Mich at 88, concerns when the application of an amended court rule would work an injustice under MCR 1.102. Therefore, although *Ligons* did not specifically cite MCR 1.102, it analyzed the issue using the standards found in the court rule, via the opinion from this Court in *Reitmeyer*. As a result, the trial court did consider the proper legal standard when citing to *Ligons* and deciding to apply the amended version of MCR 2.403 in this case, notwithstanding its lack of explicit citation to MCR 1.102.

Henry Ford College also argues that the trial court improperly concluded that the amended version of MCR 2.403 applied in this case, because there were no "further proceedings" regarding case evaluation after the effective date of the amendment. We again disagree. This argument relies on the specific language used in MCR 1.102, which states that an amended court rule applies to "all further proceedings in actions then pending." This issue requires us to interpret and construe a court rule.

> This Court interprets court rules using the same principles that govern the interpretation of statutes. Our purpose when interpreting court rules is to give effect to the intent of the Michigan Supreme Court. The language of the court rule itself is the best indicator of intent. If the plain and ordinary meaning of a court rule's language is clear, judicial construction is not necessary. [*Wolfenbarger v Wright*, 336 Mich App 1, 29; 969 NW2d 518 (2021) (quotation marks and citation omitted).]

In this case, there undoubtedly were further proceedings,[2] relevant to Henry Ford College's request for case-evaluation sanctions. First, and besides Jaber's effective rejection of the award by failing to respond, Henry Ford College would not have been entitled to seek case-evaluation sanctions under the old version of MCR 2.403 until it was granted summary disposition or otherwise resolved Jaber's claims against it. The trial court considered Henry Ford College's motion for summary disposition during oral arguments on January 18, 2022. Although the trial court ruled from the bench during the hearing, it did not enter a written order granting Henry Ford College's summary-disposition motion until February 7, 2022. Moreover, there still were more proceedings after February 7, 2022. Pertinently, Henry Ford College moved for case-evaluation sanctions on February 9, 2022; Jaber responded to the motion on February 22, 2022; and the trial court did not decide Henry Ford College's motion until May 4, 2022. Therefore, regardless of whether the January 4, 2022 deadline was a "further proceeding" under MCR 1.102, there undoubtedly were other further proceedings requiring the trial court to consider whether to apply the amended or older version of MCR 2.403. Consequently, this argument from Henry Ford College lacks merit. *Wolfenbarger*, 336 Mich App at 29; MCR 1.102.

Henry Ford College also argues that the trial court should have applied the prior version of MCR 2.403 because doing otherwise caused Henry Ford College to suffer an injustice under MCR 1.102. We disagree. Although Henry Ford College has attempted to construe its inability to obtain case-evaluation sanctions under the amended court rule as a consequence that was not present under the old rule, Henry Ford College has actually only identified that a different result would have been warranted under the older version of MCR 2.403. "[A]n injustice is not present merely because a different result would be reached under the new rules." *Reitmeyer*, 237 Mich App at 337.

At the time Henry Ford College participated in the case-evaluation proceedings, considered the award, and accepted it, Henry Ford College did not know whether it would be entitled to seek sanctions under the preamendment version of MCR 2.403. Jaber still had time to accept the award, which would disqualify any potential sanctions and close the case. Further, the trial court may have denied Henry Ford College's motion for summary disposition, and Jaber could have performed better during a trial. Therefore, Henry Ford College did not even know that it could

---

[2] Although in a dissent, Justice ZAHRA stated the term "proceeding" was a term of art and turned to a legal dictionary to define the term:

> Because "proceedings" is a legal term of art, consulting legal dictionaries is appropriate. *Black's Law Dictionary* (11th ed) defines "proceeding," in pertinent part, as "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" and as "[a]n act or step that is part of a larger action." [*Maples v State*, 507 Mich 461, 482-483; 968 NW2d 446 (2021) (ZAHRA, J., dissenting).]

As is clarified below, there undoubtedly were "proceedings" after January 1, 2022, relevant to Henry Ford College's request for case-evaluation sanctions, regardless of whether we consider the acceptance or rejection deadline as one such proceeding. *Id*.

seek case-evaluation sanctions (under the prior rule) until, at the earliest, January 18, 2022, the date the trial court announced that it was granting Henry Ford College's motion for summary disposition. Because Henry Ford College had no basis for seeking a sanction until after the effective date of the amendment of MCR 2.403, there was no injustice in applying the amended version of the court rule. *Reitmeyer*, 237 Mich App at 337.[3]

The trial court properly concluded that the amended version of MCR 2.403 applied to Henry Ford College's motion for case-evaluation sanctions. MCR 1.102; *Reitmeyer*, 237 Mich App at 337. Because the amended version of the court rule eliminated the provision allowing for such sanctions, the trial court properly denied the motion. MCR 2.403.

IV. CONCLUSION

For these reasons, we affirm the trial court's orders granting Thomas's and Henry Ford College's motions for summary disposition and denying Henry Ford College's motion for case-evaluation sanctions. Having prevailed in full in the main appeal, Thomas and Henry Ford College may tax costs related to that appeal. MCR 7.219(A)(1). Jaber may tax costs as the prevailing party in Henry Ford College's cross-appeal. *Id*.

Affirmed.

/s/ Sima G. Patel
/s/ Mark T. Boonstra
/s/ Michelle M. Rick

---

[3] We also note the possibility that Jaber decided not to respond to the award on the basis of the change in the court rule . Although MCR 1.102 only requires us to consider whether application of a current rule would work injustice, we note that application of the prior version of the rule would at least arguably be unjust to Jaber. In any event, the fact that plaintiff's decision was yet to be made when the rule was changed provides support for the conclusion that Henry Ford College did not act in reliance on the previous rule to its detriment. See *Reitmeyer*, 237 Mich App at 337.